## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

PARTHENIA RICHARDSON,                         )
                                              )
                   Plaintiff,              )
                                              )
                 v.                      )          Civil Action No. 06-00517 (ESH)
                                              )
CARLOS M. GUTIERREZ,                          )
  Secretary, U.S. Department of Commerce,     )
                                              )
               Defendant.              )
_____)

### DEFENDANT'S MOTION TO DISMSS AND FOR SUMMARY JUDGMENT

Defendant, Carlos M. Gutierrez, Secretary, United States Department of Commerce, respectfully moves, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6) and 56, to dismiss plaintiff's claim under the Family Medical Leave Act of 1993, and for entry of summary judgment on the remaining claims.

In support of its motion for summary judgment, the Defendant respectfully refers this Court to the Statement of Material Facts Not in Dispute, and the Memorandum of Points and Authorities in Support thereof, attached hereto.

Respectfully submitted,


_____/s/_____

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____/s/_____

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____

CHARLOTTE A. ABEL, D.C. BAR # 388582
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530

Agency Counsel:

Rebecca Pikofsky
U.S. Department of Commerce
Office of General Counsel
Employment & Labor Law Division
14th Street & Constitution Ave., NW, Room 5717
Washington, DC 20230

_____
PARTHENIA RICHARDSON,     )
               )
     Plaintiff,     )
               )
     v.       )   Civil Action No. 06-00517 (ESH)
               )
CARLOS M. GUTIERREZ,     )
 Secretary, U.S. Department of Commerce,  )
               )
     Defendant.    )
_____ )

## **STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

   This is a Title VII case alleging retaliation and a violation of the Family and Medical

Leave Act of 1993 (FMLA). Plaintiff, Parthenia Richardson is an African-American female who

engaged in EEO activity and alleges that, based on her protected activity, she was subjected to a

continuous pattern of harassment including being detailed from her position as Assistant Director

for Counterespionage, ZA-0080-V, Office of Security, Office of the Secretary, United States

Department of Commerce, to Special Projects Officer, ZA-0080-V. Plaintiff also alleges that she

was not provided notice of her right to take FMLA leave and that the Agency interfered with,

restrained and denied Plaintiff the exercise of her FMLA rights.

   **Background**

1.  The U.S. Department of Commerce is an Agency in the Executive Branch of the Federal

Government and is comprised of a number of bureaus and activities. Under the auspices of the

Office of the Secretary is the Office of the Chief Financial Officer/Assistant Secretary for

Administration (CFO/ASA). The CFO/ASA consists of ten directorates responsible for a wide

range of administrative functions, which include budget and financial management,

procurements, grants, outreach to small businesses, human resources management, civil rights,

facilities and real estate management, and security. See http://www.osec.doc.gov/cfo/about.html.

One of the directorates is the Office of Security (OSY), which provides policies, programs, and

oversight as it collaborates with: (1) Facility managers to reduce the terrorism risks to DOC

personnel and facilities; (2) Program managers to reduce the espionage risks to DOC personnel, information and facilities; and (3) Department and bureau leadership to increase emergency preparedness for DOC operations.  See http://www.osec.doc.gov/osy/.

2.      Richard Yamamoto (Japanese-American, male, no prior EEO activity), Senior Executive Service (SES), is the Director of Security.  Declaration of Mr. Richard Yamamoto attached hereto as Defendant's Exh. 1; Office of Security Organization Chart attached hereto as Defendant's Exh. 2.  David Bell (White, male, no prior EEO activity), is a Supervisory Security Specialist, ZA-0080-V, and holds the title of Deputy Director of Security.  Declaration of Mr. David Bell attached hereto as Defendant's Exh. 3; Exh. 2.  At the time relevant to this Complaint, Mr. Bell was serving as Assistant Director of the Anti-Terrorism Division and Acting Deputy Director of Security.[1]  Defendant's Exh. 3; Exh. 2.  Robert Page was the Supervisory Security Specialist and Assistant Director of the Emergency Management Team, and Thomas DeSeve was the Supervisory Security Specialist and Assistant Director of the Client Security Services Division.  Defendant's Exh. 2.

3.      On February 4, 2005, the Office of Human Resources (OHRM) issued a certificate to the OSY for selection of a Security Specialist, ZA-0080-IV (vice Silver), to fill the position of Assistant Director for Counterespionage.[2]  Email from Jonathan Perez to Plaintiff attached hereto as Defendant's Exh. 4 at 1-3.

4.      Plaintiff was interviewed for the position by Mr. Bell and Mr. Page.  Defendant's Exh. 3 at 3.  Based on that interview, Mr. Bell was aware of Plaintiff's sex and race.  Defendant's Exh. 3 at 10.  Mr. Bell recommended her selection to Mr. Yamamoto.  Defendant's Exh. 3 at 4.  Plaintiff was selected for the position based upon Mr. Bell's recommendation to Mr. Yamamoto.  Defendant's Exh. 1 at 3, 8.

5.      On February 20, 2005, Plaintiff, formerly a Security Specialist, GS-0080-14, with the Department of Homeland Security, was laterally transferred into the position of Supervisory

---

[1]  In July 2005, Mr. Bell was promoted to Deputy Director.
[2]  The ZA-0080-IV is a designation under a demonstration project that is equivalent to the GS-14 level.

Security Specialist, ZA-0080-V to serve as the Assistant Director of the Counterespionage Division, OSY, CFO/ASA.[3]  Bell SF-52, 9/17/2005, OSY-05-088 attached hereto as Defendant's Exh. 5 at 3.

6.      Plaintiff's tenure in this position was subject to the completion of a one-year probationary period for assignment to a supervisory or managerial position per the Department of Commerce's policy.  DAO 202-315 attached hereto as Defendant's Exh. 6; Plaintiff SF-50, 2/22/2005 attached hereto as Defendant's Exh. 7.  That period was to begin February 20, 2005. Id.

7.      Following the selection of Plaintiff, Mr. Yamamoto met with Plaintiff and briefed her on OSY goals.  Declaration of Ms. Parthenia Richardson attached hereto as Defendant's Exh. 8 at 5; Exh. 1 at 4.  The meeting included a discussion of accountability of employees using performance metrics and a discussion of how to improve the Division and which performers in the Division could assist Plaintiff in making such improvements.  Id.

8.      On March 13, 2005, Carla Fisher, Security Specialist, ZA-0080-III, was detailed from the Counterespionage Division, under the supervision of Plaintiff, to the Emergency Management Division for a period not to exceed 90 days.  Guier SF-52, 3/13/2005, OSY-05-044 attached hereto as Defendant's Exh. 9.  Plaintiff was the authorizing official.  Id.  This detail was extended for another 120 day period on June 10, 2005.  Plaintiff SF-52, 6/10/2005, OSY-05-064 attached hereto as Defendant's Exh. 10.  Plaintiff was the requesting official and Mr. Bell was the authorizing official.  Id.

9.      On March 14, 2005, Starlene Hilton, Security Specialist, ZA-0080-III, was reassigned from the Personnel Security Program to the National Security Information Program, both under the auspices of the Counterespionage Division.  Plaintiff was the authorizing official.  Guier SF-52, 3/14/2005, OSY-05-040 attached hereto as Defendant's Exh. 11.

---

[3] The ZA-0080-V is a designation under a demonstration project that is equivalent to the GS-15 level.

10.     On April 8, 2005, OHRM issued a certificate to Plaintiff for selection of a Security Specialist, ZA-0080-II/III (vice Kerrick).  Defendant's Exh. 4 at 7.

11.     In early April, Fred Schwien, Executive Secretary, brought an anonymous complaint about Plaintiff, dated April 4, 2005, to Mr. Yamamoto and expressed concern that the complaint may be related to problems Mr. Schwien was having with his security paperwork.  Defendant's Exh. 1 at 7.  The complaint charged Plaintiff with "abusing many of your best . . . employees . . . daily harassment, daily threats to fire people, positional demotions" and objected to "higher level management" characterizing her actions as simply "new management style."  Defendant's Exh. 1 at 26.

12.     On April 29, 2005, Mr. Yamamoto received a complimentary electronic mail message (email) regarding Plaintiff.  Defendant's Exh. 1 at Attachment 10.  Mr. Yamamoto forwarded the email to Plaintiff, per standard procedure, on May 2, 2005, thanking Plaintiff for the good work and encouraging her to continue.  Id.; Defendant's Exh. 3 at 13.  Mr. Yamamoto also received a Letter of Appreciation regarding Plaintiff on June 3, 2005, which he forwarded to Plaintiff thanking her for another happy customer.  Defendant's Exh. 1 at Attachment 9.

13.     Effective May 14, 2005, Katrina Herbert, Security Specialist, ZA-0080-III, transferred from the Counterespionage Division, supervised by Plaintiff, to another Agency (Department of Defense).  Guier SF-52, 5/14/2005, OSY-05-051 attached hereto as Defendant's Exh. 12.

14.     In May 2005, Plaintiff expressed concern about two subordinate managers in her Division, Security Specialists, ZA-0800-IV, Susan Powers and Linda Guier.  Declaration of Willie "Jay" Jamison attached hereto as Defendant's Exh. 13 at 3-4; Exh.7 at 8; Exh. 3 at 10-11.  Plaintiff stated that she felt she could manage her Division better without Ms. Powers and Ms. Guier.  Defendant's Exh. 6 at 16-17.  With the support of both Mr. Yamamoto and Mr. Bell, Linda Guier was reassigned to the Contract Guard Program in the Client Services Division, under the supervision of Tom DeSeve and Ms. Powers was reassigned to the Emergency Operations Center, under the supervision of Mr. Page.  Defendant's Exh. 1 at 21; Exh. 3 at 21;

Exh. 12 at 4, Sadler SF-52, 5/09/2005, OSY-05-053 attached hereto as Defendant's Exh. 14; Defendant's Exh. 7.  Both reassignments were effective May 15, 2005.  Id.

15.     Ms. Powers was physically relocated upon reassignment.  Defendant's Exh. 3 at 21.  Ms. Guiers was not immediately relocated upon reassignment because there was no appropriate space available.  Id.

16.     Despite continued support of Plaintiff, in early June 2005, it became clear to management as well as Plaintiff that there were major problems in the Counterespionage Division, although Plaintiff did not admit any were her fault, and stated that she had no solutions.  Defendant's Exh. 7 at 13; Exh. 1 at 5, 7, 13; Exh. 3 at 7, 13; Exh. 12 at 4-5.  Mr. Yamamoto was receiving complaints about Plaintiff, specifically relating to the unprofessional manner in which she managed employees.  Defendant's Exh. 1 at 5, 7, 13-14; Exh. 3 at 8.

17.     In addition, Mr. Bell noticed that morale in the Counterespionage Division was very low and employees were complaining to Mr. Bell that Plaintiff was not communicating with them and was not providing guidance to them.  Defendant's Exh. 3 at 10-11, Declaration of Mr. Harold L. Washington, Jr. attached hereto as Defendant's Exh. 15 at 5.  At that time, management expressed concern with Plaintiff's ability to manage the Division due partly to the fact that no other Assistant Directors received such complaints or experienced similar problems in their Divisions.  Defendant's Exh. 1 at 5, 7, 13-14, 23; Exh. 3 at 11; Exh. 12 at 4-5.

18.     As a result of Mr. Yamamoto's concerns with Plaintiff's management, Mr. Yamamoto asked Plaintiff to schedule weekly meetings with him so he could assist her in solving her Division's problems.  Defendant's Exh. 7 at 9; Exh. 1 at 10; Exh. 3 at 12.  Plaintiff agreed to attend such meetings.  Id.  Meetings between Mr. Yamamoto and Plaintiff took place on June 6 and 13, but Plaintiff did not schedule meetings with Mr. Yamamoto during the weeks of June 20, 27 or July 5, 2005.  Id.

19.     In early June 2005, Mr. Yamamoto requested guidance from the OHRM regarding detailing Plaintiff to another position.  Defendant's Exh. 1 at Attachment 1; Exh. 12 at 5.  In an

email message dated June 17, 2005, Willie "Jay" Jamison, Human Resource Specialist, advised Mr. Yamamoto that Plaintiff was subject to completion of a one-year probationary period since she was a new supervisor, per Department policy. Id. He advised that "during the probationary period, second level supervisors/managers should provide guidance and training on supervisory skills and techniques and monitor and document performance. Id. Mr. Jamison asked that Mr. Yamamoto "hold off" on informing Plaintiff she was being detailed until they had the opportunity for further discussion. Id.

20.    On June 25, 2005, Michael Bodin, Security Specialist, ZA-0800-III, from the Counterespionage Division, transferred to another Agency (Department of Energy). Plaintiff SF-52, 6/25/2005, OSY-05-068 attached hereto as Defendant's Exh. 16. In order to effect a smooth transition, Plaintiff requested another employee assist in her Division temporarily. Defendant's Exh. 7 at 26. As a result, on June 21, 2005, Janice King, Security Specialist, ZA-0080-III, was transferred from the Client Security Services Division (Census) to the Counterespionage Division, under the supervision of Plaintiff. Plaintiff SF-52, 6/21/2005, OSY-05-071 attached hereto as Defendant's Exh. 17. Plaintiff was the requesting official and Mr. Bell was the authorizing official. Id.

21.    Ms. King requested to be transferred back to Census explaining that she had never worked in such a "demeaning environment." Defendant's Exh. 3 at 11.

22.    On June 27, 2005, OHRM issued Plaintiff a corrected certificate for the position of Security Specialist, ZA-0080-III (vice Herbert). Defendant's Exh. 4 at 8. Although Mr. Yamamto's policy on selections was to convene a selection panel and Plaintiff asked several individuals to serve on a selection panel, Plaintiff did the interviews herself. Defendant's Exh. 7 at 8; Exh. 1 at 8-9; Exh. 3 at 5-6. Plaintiff "locked out" the members of the panel when they arrived to participate in the interview. Defendant's Exh. 3 at 6. Plaintiff selected Kendra Matthews, African-American female, to fill that position. Defendant's Exh. 7 at 26.

23.    On June 6, 2005, OHRM issued a certificate to the Agency for the selection of a Security Specialist, ZA-0080-IV (vice Silver). Defendant's Exh. 4 at 4. Mr. Yamamoto or Mr. Bell

selected Mary Isley, African-American female, for that position.  Defendant's Exh. 7 at 9; Exh. 7 at 26.  At the time the selection was made, Plaintiff was not serving as the Assistant Director for the Counterespionage Division.  Id.

**Count I:        Alleged Retaliation Against Plaintiff for Engaging in Activities Protected By Title VII**

24.      On June 20, 2005, Plaintiff contacted the Agency's Equal Employment Opportunity (EEO) Office regarding her concerns of discrimination and requested alternative dispute resolution (ADR).  Counseling Memorandum dated 8/31/2005 attached hereto as Defendant's Exh. 18.

25.      In July, Mr. Bell conducted a mid-term counseling session with Plaintiff where he cited the problems with Plaintiff's management of the Counterespionage Division, specifically citing loss of key personnel, failure to meet with Mr. Yamamoto on a weekly basis, lack of effective communication skills, and complaints from the field offices.  Defendant's Exh. 7 at 16; Exh. 3 at 13.  In addition, Mr. Bell noted that Plaintiff had unilaterally changed OSY's policy regarding interim security clearances despite Mr. Yamamoto's emphasis that she follow policies. Defendant's Exh. 1 at 15-16; Exh. 3 at 13.

26.      On or about July 11, 2005, Plaintiff was detailed to the position of Special Projects Officer pursuant to discussions beginning in early June 2005.  Defendant's Exh. 1 at 6; Email from Plaintiff to Bernadette M. Worthy attached hereto as Defendant's Exh. 19.  Mr. Yamamoto and Mr. Bell believed that detailing Plaintiff and giving her GS-15 equivalent work would provide Plaintiff with another opportunity to succeed in OSY.  Defendant's Exh. 1 at 6.  In addition, Plaintiff did not suffer any loss or reduction in grade or pay.  Defendant's Exh. 1 at 6; Exh. 18.  In that position, she was assigned special projects including a declassification project and the Homeland Security Presidential Directive (HSPD) -12 project.  Defendant's Exh. 3 at 15, Exh. 18 at 3-4.  The declassification project was a priority for the Agency because a Presidential Directive ordered that the project be completed by December 2006 by Presidential Directive.

Defendant's Exh. 7 at 16, 21-22; Exh. 3 at 14.  More than half of the primary personnel responsible for that project were SES and GS-15 managers.[4]  Defendant's Exh. 3 at 14.

27.    Mr. Bell also planned to assign Plaintiff GS-15 equivalent work on a project with Census for the decennial scheduled to occur in 2010.[5]  Defendant's Exh. 3 at 15.

28.    On or about July 11, 2005 Mr. DeSeve was detailed to the position of Supervisory Security Specialist, ZA-0080-V, for a period not to exceed 120 days.  Defendant's Exh. 6 at 20; Declaration of Mr. Robert Deats attached hereto as Defendant's Exh. 20 at 3; Exh. 3 at 19; Bell SF-52, 7/08/2005, OSY-05-075 attached hereto as Defendant's Exh. 21.

29.    Plaintiff was physically relocated to a private office, equivalent to her previous office, located in the Anti-terrorism Division, because her previous office contained a safe with sensitive files only accessible to employees in that Counterespionage Division.  Defendant's Exh. 1 at 19, Exh. 3 at 19; Exh. 19 at 7.  In addition, the Acting Assistant Director for the Counterespionage Division needed access to the safe and its contents.  Id.  The office space had previously been occupied by a GS-14 equivalent and was occupied by the Assistant Director for Anti-Terrorism, a GS-15 equivalent, after Plaintiff voluntarily resigned.  Defendant's Exh. 1 at 19; Exh. 7 at 19.

30.    Mr. DeSeve, Acting Assistant Director for Counterespionage, utilized the office previously occupied by Plaintiff before her detail because he needed access to the employees in that Division and the files kept in the safe in that office space.  Defendant's Exh. 1 at 20; Exh. 3 at 19.

---

[4]  The declassification project was assigned to the Acting Assistant Director for the Counterespionage Division, Plaintiff's replacement, upon Plaintiff's voluntary resignation. Defendant's Exh. 3 at 16.

[5]  The Decennial Census is the nation's oldest and most comprehensive source of population and housing information.  As provided for in the Constitution, the U.S. Government uses the Census Bureau's count of the population in each state to apportion the seats in the House of Representatives.  See U.S. Const. Art. I, § III.

**Count II:    Alleged Violation of the Family and Medical Leave Act of 1993**

31.    Plaintiff never discussed any medical problems, with the exception of allergies with Mr. Yamamoto.  Defendant's Exh. 1 at 21.

32.    Plaintiff was on leave July 8, 12-14 and 19-29 and August 1-5 and 11-29, 2005.  Ex. 8 at 21.  Plaintiff did not specify to Mr. Bell the reasons for her leave or the specifics of any medical condition, except that Plaintiff's leave beginning on July 19, 2005, was for an unspecified type of surgery.  Def. Exh. 2 at 21-22.  Email from David Bell to Plaintiff attached hereto as Defendant's Exh. 22 at 13.  Plaintiff never articulated to Mr. Bell or Mr. Yamamoto that she was suffering from a serious health condition that rendered her unable to perform the functions of her job.  Defendant's Exh. 1 at 21; Exh. 2 at 21-22.  Plaintiff provided a letter from her doctor stating she needed time to recover from surgery.  Defendant's Exh. 1 at 22.  Plaintiff requested and was approved sick leave.  Defendant's Exh. 1 at 22.  Plaintiff never requested or discussed the possibility of Family Medical Leave Act leave to recover from her surgery.  Defendant's Exh. 8 at 21; Exh. 22 at 13; Exh. 1 at 21; Exh. 2 at 21-22.

33.    Plaintiff was never denied sick leave and was never questioned as to her requests for sick leave.  Defendant's Exh. 8 at 21; Exh. 22 at 13; Exh. 1 at 21; Exh. 2 at 21-22.

34.    During the period of Plaintiff's leave, Mr. Bell sent Plaintiff email messages on July 19 and 20, wishing Plaintiff a fast recovery, July 21, July 27, August 1, 16 and 26.  Defendant's Exh. 3 at 22; Email from Plaintiff to Rich Yamamoto attached hereto as Defendant's Exh. 23 at 12; Exh. 21 at 1-2, 4-6.  Mr. Bell emailed Plaintiff while she was on leave in part to ask Plaintiff for a date on which she expected to have an action plan for the declassification project prepared.  Defendant's Exh. 3 at 17; Email from Plaintiff to Jane Ovedovitz attached hereto as Defendant's Exh. 24 at 7-8.  Mr. Bell did not expect Plaintiff to work on the action plan while on leave, merely to provide an estimated date of the completion of the plan.  Id.

35.    In mid-August, Plaintiff requested an accommodation from Mr. Bell for stress, but never provided the necessary medical documentation to support her request.  Defendant's Exh.3 at 21; Exh. 23 at 3; Notice of Decision, U.S. Department of Labor Dated 1/03/06 attached hereto as

Defendant's Exh. 25. Mr. Bell worked with OHRM on the accommodation issue as is required under DAO 215-10. Defendant's Exh. 3 at 21-22; DAO 215-10 attached hereto as Defendant's Exh. 26. Mr. Bell was working with OHRM on Plaintiff's request when she voluntarily resigned, so the processing of the request was not completed. Defendant's Exh. 3 at 22.

36. On August 8, 2005, Plaintiff filed her EEO complaint alleging that she was subjected to a continuous pattern of discrimination and harassment constituting a hostile work environment due to her race (African-American) and sex (female) and alleging the following:

a. During the period of May to June 2005, Mr. Yamomoto did not support her as a supervisor and challenged her employment actions, despite her having obtained guidance from the Office of Human Resources and the Office of General Counsel.

b. In June 2005, Mr. Yamomoto took away her ability to make supervisory decisions, including hiring selections.

c. Since June 2005, Mr. Yamomoto requires her to meet him on a weekly basis for 30 minutes to discuss supervisory decisions and duties.

d. During the period of May to June 2005, Mr. Yamomoto failed to provide her any positive feedback, despite receiving positive feedback from two major clients, and also failed to openly acknowledge her contributions to the organization.

e. During the period of April to June 2005, Mr. Yamomoto undermined her authority with staff by allowing them to come directly to him with their concerns and siding with them on controversial matters without first obtaining her rationale for employment decisions and actions.

f. In May 2005, Mr. Yamomoto allowed her Caucasian male counterparts and subordinate staff to communicate with her in a disrespectful and condescending manner.

g.  During the period of April to May 2005, Mr. Yamomoto treated her with hostility and openly challenged any statements she made in staff meetings or other open forums.

h.  On June 1, 2005, Mr. Yamomoto told Plaintiff that he, his colleagues, and his staff did not have confidence in her ability to manage, and added that while he had received outstanding recommendations from previous supervisors and was excited about her coming on board he now had doubts.  At that time, Mr. Yamomoto also stated that he had no more "blue chips" available, and that he has used them all up.

In addition to discrimination and harassment constituting a hostile work environment due to her race and sex, Plaintiff also alleged retaliation for having engaged in the EEO complaints process when:

i.  On July 11, 2005, she was informed by Dave Bell, Acting Deputy Director, Office of Security, that effective July 12, 2005, she was being temporarily reassigned from her position as Assistant Director for the Counterespionage Division for a period of 120 days. She also learned that Thomas DeSeve, a Caucasian male counterpart, was assigned to assume her responsibilities while continuing his current responsibilities.

j.  On July 11, 2005, Mr. Bell gave Plaintiff a mid-year counseling that was less than favorable and cited items/issues that were inaccurate.

k.  On July 11, 2005, she was informed that she was to move out of her office so that Mr. DeSeve could occupy her space. She contends that Mr. DeSeve already had adequate space that would have allowed him to effectively manage both his pre-existing duties and the duties reassigned to him. Plaintiff further contends that Linda Guier and Susan Powers, two Caucasian, GS-14 female managers, were reassigned from under her supervision on May 9, 2005, yet were not required to relocate.

l.  She was required to move to a workspace where GS-14 employees had better accommodations.

13

    m.  The duties given to her on her reassignment are GS-11 and GS-12 duties.[6]

Complaint of Employment Discrimination Against the U.S. Department of Commerce attached hereto as Defendant's Exh. 27; Susan E. Thomas Letter to Plaintiff 9/06/05 attached hereto as Defendant's Exh. 28.

31.    On August 30, 2005, Plaintiff tendered her voluntary resignation to be effective September 17, 2005.  Defendant's Exh. 25 at 9, 14; Exh. 5.  Plaintiff then sent an email on September 7, 2005, making her voluntary resignation effective on September 8, 2005.

32.    On March 20, 2006, Plaintiff filed the instant Complaint alleging retaliation.  Compl. on May 18, 2006, Plaintiff filed the First Amended Complaint, specifically alleging retaliation and a violation of the FMLA.  First Amended Compl.  Plaintiff does not allege harassment based on sex or race or constructive discharge in either complaint.  Compl. and First Amended Compl.

33.    On December 22, 2005, the Agency issued a Final Agency Decision finding no merit to any of Plaintiff's allegations.  Final Agency Decision attached hereto as Defendant's Exh. 29.

34.    Plaintiff was replaced on January 22, 2006, by Tracey Berry, African American female, who now holds the position of Assistant Director for the Counterespionage Division.  Berry SF-50, 1/22/2006 attached hereto as Defendant's Exh. 30.  Mr. Bell was the selecting official for that position.  Id.

---

[6]  Plaintiff ultimately amended her EEO complaint to include allegations that on August 17, 2005, she spoke to Bell and requested reasonable accommodation, as recommended by her physician for stress and Bell commented, "You are not under any stress, we just moved you from stress" and that she was constructively discharged on September 6, 2005.  Defendant's Exh. 26; Susan E. Thomas Letter to Plaintiff 9/16/05 attached hereto as Defendant's Exh. 31.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
CHARLOTTE A. ABEL, D.C. BAR # 388582
Assistant United States Attorney
555 4th St., N.W., Civil Division
Washington, D.C. 20530
(202) 307-2332

Agency Counsel:

Rebecca Pikofsky
U.S. Department of Commerce
Office of General Counsel
Employment & Labor Law Division
14th Street & Constitution Ave., NW, Room 5717
Washington, DC 20230

_____

| | |
|---|---|
| PARTHENIA RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 06-00517 (ESH) |
| | ) |
| CARLOS M. GUTIERREZ, | ) |
| Secretary, U.S. Department of Commerce, | ) |
| | ) |
| Defendant. | ) |

_____ )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

### BACKGROUND

This is a Title VII case alleging retaliation and a violation of the Family and Medical Leave Act of 1993. Plaintiff, Parthenia Richardson is an African American female who engaged in EEO activity, and the alleged retaliating officials, Richard Yamamoto and David Bell are Japanese-American and White male, respectively.

Plaintiff initially made contact with the Equal Employment Opportunity (EEO) counselor on June 20, 2005. Defendant's Exh. 18. On July 11, 2005, during her supervisory probationary period and pursuant to discussions with Human Resources dating back to early June regarding Plaintiff's difficulty managing the Counterespionage Division, Mr. Bell detailed Plaintiff to the position of Special Projects Officer in an effort to give Plaintiff an opportunity to succeed within the Agency. Defendant's Exh. 1 at 6, Exh. 3 at 14; Exh. 19. Plaintiff did not incur any loss of grade, salary or benefits as a result of the detail and was assigned GS-15 equivalent work. Defendant's Exh. 1 at 6; Exh. 3 at 14. Plaintiff was physically relocated to a private office, equivalent to her previous office, because her previous office contained a safe with sensitive files

only accessible to employees in the Counterespionage Division.  Defendant's Exh. 1 at 19; Exh. 3 at 19; Exh. 20 at 7.

On August 8, 2005, Plaintiff filed her formal EEO complaint.[7]  Defendant's Exh. 27; Exh. 28.

Plaintiff was on leave July 8, 12-14 and 19-29 and August 1-5 and 11-29.  Defendant's Exh. 3 at 16, 21.  Plaintiff did not specify to Mr. Bell the reasons for her leave or the specifics of any medical condition, except that Plaintiff's leave beginning on July 19, 2005, was for an unspecified type of surgery.  Defendant's Exh. 22 at 13; Exh. 3 at 21, 22.  Plaintiff never articulated to Mr. Bell or Mr. Yamamoto that she was suffering from a serious health condition that rendered her unable to perform the functions of her job.  Defendant's Exh. 22 at 13; Exh. 3 at 21, 22; Exh. 1 at 21.  Plaintiff provided a letter from her doctor stating she needed time to recover from surgery.  Defendant's Exh. 3 at 22.  Plaintiff requested and was approved sick leave.  Defendant's Exh. 3 at 22.  Plaintiff never requested or discussed the possibility of Family Medical Leave Act leave to recover from her surgery.

During the period of Plaintiff's leave, Mr. Bell sent Plaintiff email messages on July 19 and 20, wishing Plaintiff a fast recovery, July 21, July 27, August 1, 16 and 26.  Defendant's Exh. 3 at 22; Exh. 23 at 12; Exh. 22 at 1-2, 4-6.  Mr. Bell emailed Plaintiff while she was on leave in part to ask Plaintiff for a date on which she expected to have an action plan for the declassification prepared.  Defendant's Exh. 3 at 17; Exh. 23 at 7-8.  Mr. Bell did not expect Plaintiff to work on the action plan while on leave, merely to provide an estimated date of the completion of the plan.  Id.

---

[7] Plaintiff amended the EEO complaint to include actions taking place after August 8, 2005. Defendant's Exh. 25; Exh. 26; Exh. 29.

In mid-August, Plaintiff requested an accommodation from Mr. Bell for stress, but never provided the necessary medical documentation to support her request. Defendant's Exh. 3 at 21; Exh. 24; Exh. 25. Mr. Bell worked with Human Resources on the accommodation issue as is required under DAO 215-10. Defendant's Exh. 3 at 21-22; Exh. 26. Mr. Bell was working with Human Resources on Plaintiff's request when she voluntarily resigned (August 30), so the processing of the request was not completed. Defendant's Exh. 3 at 22.

On March 20, 2006, Plaintiff filed a Complaint in this Court and on May 18, 2006, Plaintiff filed a First Amended Complaint Court alleging retaliation and a violation of the Family and Medical Leave Act of 1992. Plaintiff alleges that she was retaliated against when the Agency subjected her to adverse and disparate treatment for her opposition to alleged unlawful employment practices and her participation in protected activity. Compl. ¶ 49. Plaintiff also alleges a violation of the Family and Medical Leave Act of 1993 when she was not provided notice of her right to take FMLA leave and that the Agency interfered with, restrained and denied Plaintiff her rights under FMLA. Compl. ¶ 50.

The Court should grant the Defendant's Motion for Summary Judgment because the Plaintiff cannot establish a prima facie case for her retaliation claim, the Agency has articulated legitimate, non-discriminatory reasons for all of its actions, and the Plaintiff has not offered any proof that those reasons are pretext for retaliation. In addition, the Court should grant the Defendant's Motion to Dismiss the FMLA claim because Plaintiff has not suffered or alleged any injury. Accordingly, judgment should be entered in favor of the Agency on the retaliation claim and the FMLA claim should be dismissed.

## ARGUMENT

**I.     THE GOVERNING PROCEDURAL AND SUBSTANTIVE LEGAL PRINCIPLES**

### A.     The Governing Procedural Law:  Civil Rule 56

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  Matsushita, 475 U.S. at 587.  The mere existence of a factual dispute, however, will not defeat summary judgment.  The non-moving party must show that the dispute is genuine and material to the case.  That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party.  Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted."  Id. (citing Anderson, 477 U.S. at 249-50.  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'"  Celotex Corp., 477 U.S. at 323 (citations omitted).

Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment.  See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  As the Supreme Court has instructed:  "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## B.     The Governing Substantive Law:  Title VII

In order to survive summary judgment in a Title VII case, a plaintiff must produce some evidence to show that the Agency **intentionally** retaliated against her.  Plaintiff may proceed using direct evidence of discrimination or under the now-familiar formula enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).  No direct evidence of intentional retaliation exists in this case.  Accordingly, to prove her case, Plaintiff must meet all the elements of the McDonnell Douglas formula.

Under the McDonnell Douglas test, Plaintiff must first show a prima facie case of disparate treatment on the basis of retaliation.  To establish a prima facie case of retaliation, Plaintiff must show that:  (1) she engaged in prior protected EEO activity; (2) the responsible official was aware of the activity; (3) she was subsequently disadvantaged by an adverse action; and (4) that there is a causal link between the protected activity and the adverse action.  Forkkio,

306 F.3d at 1130; <u>Brown v. Brody</u>, 199 F.3d at 452; <u>Lockamy v. National Labor Relations Bd.</u>, 182 F. Supp. 2d 26, 33 (D.D.C. 2001).

       If Plaintiff succeeds in establishing a <u>prima</u> <u>facie</u> case, the burden shifts to the Agency to articulate a legitimate, non-discriminatory reason for its actions.  <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell Douglas</u>, 411 U.S. at 802.  Once the Agency has articulated a legitimate, non-discriminatory reason for its actions, the <u>prima</u> <u>facie</u> inference of discrimination drops from the case.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 507, 510-11 (1993); <u>Burdine</u>, 450 U.S. at 255.  Plaintiff then must prove that the Agency's proffered reason was not the true reason for its actions and was only a pretext for unlawful discrimination.  <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell Douglas</u>, 411 U.S. at 804; <u>see also</u> <u>St. Mary's Honor Center</u>, 509 U.S. at 507-08; <u>Aka v. Washington Hospital Center</u>, 156 F.3d 1284, 1289 (D.C. Cir. 1998).  The burden of persuasion that discrimination motivated the Agency's actions remains at all times with Plaintiff.  <u>St. Mary's Honor Center</u>, 509 U.S. at 507; <u>Burdine</u>, 450 U.S. at 253; <u>Aka</u>, 156 F.3d at 1289.  Applying the governing procedural and substantive law to the undisputed facts of this case yields the conclusion that summary judgment should be entered against Plaintiff's claims.

## II.    COUNT I - RETALIATION

       To establish a <u>prima</u> <u>facie</u> case of retaliation, Plaintiff must show that:  (1) she engaged in prior protected EEO activity; (2) the responsible official was aware of the activity; (3) she was subsequently disadvantaged by an adverse action; and (4) that there is a causal link between the protected activity and the adverse action.  <u>Forkkio</u>, 306 F.3d at 1130; <u>Brown v. Brody</u>, 199 F.3d at 452; <u>Lockamy v. National Labor Relations Bd.</u>, 182 F. Supp. 2d 26, 33 (D.D.C. 2001).  To demonstrate a "causal link," Plaintiff must demonstrate that Mr. Yamamoto and Mr. Bell knew of her EEO complaint, and that shortly after she filed the complaint, they caused her to suffer

"materially adverse consequences affecting the terms, conditions or privileges" of her employment. Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999), citing Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) and McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984); also see Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006); Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006).

On June 22, 2006, the U.S. Supreme Court decided Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405 (2006) further defining the scope of Title VII's anti-retaliation provisions. In Burlington Northern, the Supreme Court held retaliation may encompass action outside of the workplace and that the objective test for harm for purposes of establishing a retaliation claim is action that a reasonable employee would find "materially adverse." Id. at 2415. In defining "materially adverse," the Court held that the employer's alleged wrongful action "well might … dissuade[] a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Rochon v. Gonzales, 438 F.3d 1211, 1210 (D.C. Cir. 2006)). Under Burlington Northern and the District of Columbia Circuit law, then, the Agency's actions must still be "materially adverse" to be cognizable.

### Plaintiff Does Not Establish A Prima Facie Case of Retaliation

Plaintiff fails to establish a prima facie case of retaliation because she cannot establish that she suffered a "materially adverse" action, or that there is a causal link between the protected activity and a "materially adverse" action.[8]

---

[8] Plaintiff does not specifically plead that she suffered harassment as a result of retaliation. Even if she had, she would fail to establish a prima facie case because she cannot prove that her workplace was "*severe or pervasive* to alter the conditions of [her] employment and create an abusive working environment." See *Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 81 (1993) (emphasis added); *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

The only action Plaintiff specifically points to is that the Agency detailed her to Special Projects Officer for 120 days. A detail standing alone does not constitute an adverse action. Rountree v. Johanns, Civil Action No. 04-806 (ESH), 2005 U.S. Dist. LEXIS 16400 (D.D.C. 2005). Plaintiff did not incur any loss of grade, salary or benefits as a result of the detail because as Special Projects Officer, Plaintiff retained her GS-15 equivalent status, pay, and series. Defendant's Exh. 1 at 6; Exh. 19. "Changes in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997); Bryant v. Brownlee, 265 F. Supp. 2d at 61-62 (recognizing that changes in assignments, formal criticism, and poor performance evaluations do not ordinarily constitute adverse personnel actions); Childers v. Slater, 44 F. Supp. 2d 8, 19 (D.D.C. 1999), vacated in part on other grounds ("mere inconveniences and alterations of job responsibilities will not rise to the level of adverse action"); Francis v. Bd. of School Commissioners, 32 F. Supp. 2d 316, 320 n.3 (D. Md. 1999) (a transfer that placed plaintiff in her original department with her original title and salary, albeit with slightly reduced supervisory duties, is not an adverse employment action).

Applying the Burlington Northern "materially adverse" test to the facts of this case, the outcome is the same—i.e., there is nothing that Ms. Richardson can point to that made her reassignment objectively less desirable than her original assignment. In Burlington Northern, the plaintiff was reassigned to work that was "more arduous", less prestigious, "dirtier," and less desirable. Here, Plaintiff's detail did not result in any change in level, pay or benefits, it simply was a change in her responsibilities, and was not "materially adverse". Northern Burlinton, at 2415; Lester v. Natsios, 290 F. Supp. 2d 11, 29-30 (D.D.C. 2003) (recognizing that increase in workload and changes in responsibility are not adverse actions but constitute "ordinary

tribulations of the workplace" which employees should expect); Jones v. Billington, 12 F. Supp.

2d 1, 13 (D.D.C. 1997) ("not everything that makes an employee unhappy is an actionable

adverse action"). Here Plaintiff's subjective dissatisfaction with the detail does not support her

allegations that the detail was an adverse action. Jordan v. Evans, 355 F. Supp. 2d 72, 80

(D.D.C. 2004).

In addition, Plaintiff fails to demonstrate a nexus between her protected activity and her

detail and voluntary resignation. There is no evidence that the responding management officials

ever made any direct statement regarding the EEO claim. Furthermore, the decision to detail

Plaintiff was based on documented deficiencies in her work performance and was in the works

well before Plaintiff contacted the Agency EEO Office.

Although Plaintiff was not detailed until July 11, 2005, the evidence illustrates that

management contemplated the detail and contacted OHRM regarding the detail well before the

detail was effected and well before Plaintiff made initial contact with an EEO counselor on June

20, 2005. Defendant's Exh. 18.

In early June, it became clear to management as well as to Plaintiff that there were major

problems in the Counterespionage Division, although Plaintiff did not admit any were her fault,

and stated that she had no solutions. Defendant's Exh. 8 at 13, Exh. 1 at 5, 7, 13; Exh. 3 at 7, 13;

Exh. 13 at 4-5. Mr. Yamamoto was receiving complaints about Plaintiff, specifically relating to

the unprofessional manner in which she managed employees. Defendant's Exh. 1 at 5, 7, 13-14;

Exh. 3 at 8.

In addition, Mr. Bell noticed that morale in the Counterespionage Division was very low

and employees were complaining to Mr. Bell that Plaintiff was not communicating with them

and was not providing guidance to them. Defendant's Exh. 3 at 10-11, Exh. 15 at 5. At that

time, management expressed concern with Plaintiff's ability to manage the Division due partly to the fact that no other Assistant Directors received such complaints or experienced similar problems in their Divisions.  Defendant's Exh. 1 at 5, 7, 13-14, 23; Exh. 3 at 11, Exh. 13 at 4-5.

As a result of Mr. Yamamoto's concerns with Plaintiff's management, Mr. Yamamoto asked Plaintiff to schedule weekly meetings with him so he could assist her in solving her Division's problems.  Defendant's Exh. 8 at 9; Exh. 1 at 10; Exh. 3 at 12.  Plaintiff agreed to attend such meetings.  Id.  Meetings between Mr. Yamamoto and Plaintiff took place on June 6 and 13, but Plaintiff did not schedule meetings with Mr. Yamamoto during the weeks of June 20, 27 or July 5, 2005.  Id.

In early June 2005, Mr. Yamamoto requested guidance from the OHRM regarding detailing Plaintiff to another position.  Defendant's Exh. 1 at Attachment 1; Exh. 13 at 5.  In an email message dated June 17, 2005, Mr. Jamison, Human Resource Specialist, advised Mr. Yamamoto that Plaintiff was subject to completion of a one-year probationary period since she was a new supervisor, per Department policy.  Id.  He advised that "during the probationary period, second level supervisors/managers should provide guidance and training on supervisory skills and techniques and monitor and document performance.  Id.  Mr. Jamison asked that Mr. Yamamoto "hold off" on informing Plaintiff she was being detailed until they had the opportunity for further discussion.  Id.

In Clark County School Dist. v. Breeden, 532 U.S. 268 (2001), the Supreme Court held that the plaintiff could not make out a claim for retaliation when an employee was transferred after she filed a discrimination complaint, because the employer had contemplated the transfer before it learned of her discrimination complaint.  Id. at 272.  Likewise, in McKenna v. Weinberger, 729 F.2d 783, 791 (D.C. Cir. 1984), the court found plaintiff's personality, not

retaliation, to be the cause of dismissal where the termination process was already in progress when employer learned of plaintiff's claim of discrimination.  In the instant case, Mr. Yamamoto had already contemplated reassigning plaintiff to another position before she filed a complaint of discrimination.  The fact that the reassignment was consummated after the plaintiff filed a complaint of discrimination is of no moment and does not support plaintiff's claim of retaliation.

Additionally, a plaintiff who advances a constructive discharge claim under Title VII must show working conditions so intolerable that a reasonable person would have felt compelled to resign.  Pennsylvania State Police v. Suders, 2004 WL 1300153.  In order to prove constructive discharge, a plaintiff must show, in addition to discrimination, that the employer deliberately made working conditions so intolerable that the employee had no option but to quit. Katradis v. Dav-El of Washington, D.C., 846 F.2d 1482, 1485 (D.C. Cir. 1988).  Roberts v. Segal Company, 125 F.Supp. 2d 545 (D.C.D.C. 2000).   An employee who resigns and who alleges the resignation was not voluntary has the burden of establishing that the resignation was involuntary.  Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975.)  Here, plaintiff's reassignment, even if not to her liking, does not make her working conditions so intolerable as to force her resignation.

### B.    The Agency Provides Legitimate Non-Discriminatory Reasons for its Actions

In order to meet its burden, the Agency need only show that it based its decision on a legitimate consideration and not on an illegitimate one.  See Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).  The Supreme Court stated in Board of Trustees v. Sweeney, 439 U.S. 24, 25 (1978), that the defendant need not "prove absence of discriminatory motive." Rather, the defendant need only "articulate some legitimate, nondiscriminatory reason for its action."  Id.  In Texas Department of Community Affairs v. Burdine, the Supreme Court held

that the burden on the employer is to "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." See Burdine, 450 U.S. 257 (1981).

Even if, assuming arguendo, Plaintiff could make out a prima facie case of retaliation, the Agency has articulated legitimate, non-retaliatory reasons for its actions. All of the responding management officials deny that their actions were based on any protected activity by Plaintiff. Defendant's Exh. 1; Exh. 3. In fact, all of the evidence demonstrates that the Agency detailed Plaintiff because she was not performing well as a supervisor and that the Agency made every attempt to support Plaintiff in her supervisory role before detailing her.

Mr. Yamamoto became aware of complaints against Plaintiff as early as April 2005. Defendant's Exh. 1 at 7. By early June, it was clear to management as well as to Plaintiff that there were major problems in the Counterespionage Division, although Plaintiff did not admit any were her fault, and stated that she had no solutions. Defendant's Exh. 8 at 13, Exh. 1 at 5, 7, 13; Exh. 3 at 7, 13; Exh. 13 at 4-5. Mr. Yamamoto was receiving complaints about Plaintiff, specifically relating to the unprofessional manner in which she managed employees. Defendant's Exh. 1 at 5, 7, 13-14; Exh. 3 at 8.

In addition, Mr. Bell noticed that morale in the Counterespionage Division was very low and employees were complaining to Mr. Bell that Plaintiff was not communicating with them and was not providing guidance to them. Defendant's Exh. 3 at 10-11; Exh. 15 at 5. At that time, management expressed concern with Plaintiff's ability to manage the Division due partly to the fact that no other Assistant Directors received such complaints or experienced similar problems in their Divisions. Defendant's Exh. 1 at 5, 7, 13-14, 23; Exh. 3 at 11, Exh. 13 at 4-5.

In addition, the loss of staff in the Division under Plaintiff's management concerned management officials. During Plaintiff's tenure as Assistant Director of the Counterespionage Division, Ms. Fisher was detailed from the Counterespionage Division, under the supervision of Plaintiff, to the Emergency Management Division for a total of 210 days; Ms. Hilton, was reassigned from the Personnel Security Program to the National Security Information Program; Ms. Herbert transferred from the Counterespionage Division to another Agency; Ms. Guier was reassigned to the Contract Guard Program in the Client Services Division; Ms. Powers was reassigned to the Emergency Operations Center; Mr. Bodin transferred to another Agency; and Ms. King, temporarily transferred from Census to the Counterespionage Division requested to be transferred back to Census because she was uncomfortable with the work environment. Defendant's Exh. 3 at 11; Exh. 14; Exh. 9; Exh. 10; Exh. 11; Exh. 12; Exh. 16; Exh. 17.

Management also was concerned with Plaintiff's failure to follow the policies and procedures of the office. Plaintiff made a selection without convening a panel, contrary to Mr. Yamamoto's policy that all selections convene a selection panel. Defendant's Exh. 8 at 8; Exh. 1 at 8-9; Exh. 3 at 5-6. In addition, Plaintiff had unilaterally changed OSY's policy regarding interim security clearances despite Mr. Yamamoto's emphasis that she follow policies. Defendant's Exh. 1 at 15-16; Exh. 3 at 13.

As a result of the Agency's concerns with Plaintiff's management, Mr. Yamamoto asked Plaintiff to schedule weekly meetings with him so he could assist her in solving her Division's problems. Defendant's Exh. 8 at 9; Exh. 1 at 10; Exh. 3 at 12. Plaintiff agreed to attend such meetings. Id. Meetings between Mr. Yamamoto and Plaintiff took place on June 6 and 13, but Plaintiff did not schedule meetings with Mr. Yamamoto during the weeks of June 20, 27 or July 5, 2005. Id.

In early June 2005, Mr. Yamamoto requested guidance from the OHRM regarding detailing Plaintiff to another position. Defendant's Exh. 1 at Attachment 1; Exh. 13 at 5. In an email message dated June 17, 2005, Mr. Jamison, Human Resource Specialist, advised Mr. Yamamoto that Plaintiff was subject to completion of a one-year probationary period since she was a new supervisor, per Department policy. Id. He advised that "during the probationary period, second level supervisors/managers should provide guidance and training on supervisory skills and techniques and monitor and document performance. Id. Mr. Jamison asked that Mr. Yamamoto "hold off" on informing Plaintiff she was being detailed until they had the opportunity for further discussion. Id. Management officials had long contemplated Plaintiff's detail and that the detail was necessary to fulfill the Agency's mission. Therefore, the Agency has articulated legitimate non-discriminatory reasons for its actions.

### C.     Plaintiff Cannot Establish that the Agency's Legitimate Non-Discriminatory Reasons are Pretext for Retaliation

Once the Agency has carried the burden of production, the McDonnell Douglas framework is no longer relevant, and "the presumption raised by the prima facie case is rebutted,' and 'drops from the case.'" St. Mary's Honor Center, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 255 & n.10) (internal citations omitted). It is then incumbent upon Plaintiff to prove that the Agency's legitimate, non-discriminatory reasons were not its true reasons but rather were pretextual. See McDonnell Douglas, 411 U.S. at 802-04; Burdine, 450 U.S. at 252-53. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center, 509 U.S. at 515 (emphasis in original). "It is not enough, in other words, to disbelieve the employer, the fact finder must believe the plaintiff's explanation of intentional discrimination." Id. at 519.

Plaintiff bears the ultimate burden of persuasion on the issue of whether she was intentionally discriminated against. Burdine, 450 U.S. at 253.

There is no evidence of pretext for retaliation. Employers generally have broad discretion to set policies and carry out personnel decisions, and should not be second-guessed by reviewing authorities absent evidence of an unlawful motivation. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Plaintiff's conclusory allegations that the detail was motivated by retaliation are not enough to create an inference that the Agency's legitimate non-discriminatory reasons for taking any actions are pretext for retaliation. Accordingly, Plaintiff cannot meet her burden to adduce evidence that any of the Agency's legitimate, non-discriminatory reasons for its actions were a pretext for retaliation. Summary judgment should therefore be entered in favor of the Agency on Plaintiff's claim of retaliation.

## III.    COUNT II - FMLA

A.    Motion to Dismiss Because the Plaintiff Lacks Standing

Plaintiff alleges in Count II of her First Amended Complaint that the Agency violated the Family Medical Leave Act ( FMLA) by failing to provide notice of her right to take FMLA leave and by interfering with, restraining, and denying her the exercise of her rights under the FMLA. Complaint ¶ 49. As detailed below, Count II must be dismissed because Plaintiff suffered no injury in fact and thus lacks standing.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint." Mansfield v. Billington, 432 F. Supp. 2d 64, 69 (D.D.C. 2006). Dismissal in accordance with Fed. R. Civ. P. 12(b)(6) is warranted if a defendant can prove beyond doubt that the plaintiff cannot set forth facts in support of her claim that would entitle her to relief. Guam Indus. Servs. v. Rumsfeld, 405 F. Supp. 2d 16, 19 (D.D.C. 2005). When analyzing a motion to

dismiss for lack of standing, if after reviewing the record before the court, "the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." Warth v. Seldin, 422 U.S. 490, 501-502 (1975); see also Muir v. Navy Fed. Credit Union, 366 F. Supp. 2d 1, 2 (D.D.C. 2005). A Plaintiff acquires standing if she proves "injury in fact," causation, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); see also Worth v. Jackson, 451 F.3d 854, 858 (D.C. Cir. 2006). The injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Id.; see also LPA Inc. v. Chao, 211 F.Supp.2d 160, 164 (D.D.C. 2002).

The FMLA provides eligible employees with both substantive rights and protections. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325 (1st Cir. 2005). The Act gives eligible employees of public agencies the right to take "unpaid leave, or to substitute appropriate paid leave if the employee has earned or accrued it" for up to 12 workweeks during a 12 month period because of a serious health condition that makes the employee unable to perform the functions of her position. 29 C.F.R. § 825.100. The Act also provides covered employees with the right to maintain health benefits while on leave and to return to their Government positions or equivalent positions with equivalent pay following the leave. Id.

In addition, the FMLA protects eligible employees by prohibiting employers from interfering with, restraining, or denying an employee's ability to exercise any of the aforementioned FMLA rights. 29 U.S.C. § 2615(a)(1). The Act also prohibits employers from discriminating against employees asserting their rights under the statute. 29 U.S.C. § 2615(a)(2).

In this instance, Plaintiff requested and received paid sick leave for the period covering her surgery beginning on July 19 and her subsequent recovery from July 20-29, August 1-5, and 11-29. Defendant's Exh. 3 at 16, 21. In addition, the Agency provided Plaintiff with paid sick

leave for an unspecified reason for dates prior to her surgery including July 8 and 12-14.

Defendant's Exh. 3 at 16, 21.  There is no evidence of any occasions in which the Agency

restricted Plaintiff from taking leave for her surgery or her recovery.    In addition, there is no

evidence that the Agency ever denied or questioned Plaintiff's sick leave.  In effect, the outcome

of the Agency's actions in approving sick leave were akin to the FMLA's provision for the

substitution of accrued paid leave in lieu of unpaid leave.  29 C.F.R. § 825.100. There is no

actual or imminent injury.  Moreover, it is undisputed that Plaintiff maintained her health

benefits while on leave; this is also in accordance with the FMLA and does not amount to an

injury in fact.  Id.

Following her leave, Plaintiff returned to an equivalent Government position with equivalent

pay.[9]  Id.  Plaintiff was detailed as Special Projects Officer on July 12, 2006.[10]  Defendant's Exh.

1 at 6; Exh. 3 at 14; Exh. 19.  In this position, Plaintiff was assigned GS-15 equivalent work,

which included organizing and leading a declassification project as well as the Homeland

Security Presidential Directive-12 Project.  Id.  At no time did Plaintiff's salary and benefits

change as a result of this detail.  Defendant's Exh. 1 at 6; Exh. 19.  The declassification project

---

[9] Arguably, Plaintiff returned to the same position, since her 120-day detail to Special Project Officer began on July 11, 2005 and her surgery did not occur until July 19, 2005.  Defendant's Exh. 1 at 6, Exh. 3 at 14, Exh. 18; Defendant's Exh. 21 at 13; Exh. 3 at 21, 22.

[10] Plaintiff had not yet completed her supervisory probationary period, therefore, her managers had the ability to reassign her to non-supervisory positions during this one-year period.  DAO 202-315.  Defendant's Exh. 6.  Plaintiff's detail, as noted previously, stemmed from a series of complaints about her performance managing the Counterespionage Division and the belief that her new position would allow her another opportunity to succeed at OSY.  Defendant's Exh. 1 at 6.  The detail was unrelated to her request for leave, as evidenced by an e-mail exchange between Mr. Yamamoto and Mr. Jamison, Human Resource Specialist, in which Mr. Jamison asked that Mr. Yamamoto "hold off" on informing Plaintiff that she was being detailed until they had the opportunity for further discussion.  Defendant's Exh. 1 at Attachment 1; Exh. 12 at 5.  Mr. Jamison sent this e-mail on June 17, 2005.  Defendant's Exh. 1 at Attachment 1; Exh. 12 at 5.  According to the Amended Complaint, Plaintiff did not put the Agency on notice of her surgery until "late June," after the aforementioned e-mail exchange.  Complaint ¶ 27.

was a priority for the Agency because a Presidential Directive ordered that the project be completed by December 2006. Defendant's Exh. 8 at 16, 21-22; Exh. 3 at 14. More than half of the primary personnel responsible for that project were SES and GS-15 managers. Defendant's Exh. 3 at 16. In fact, upon Plaintiff's voluntary resignation, the project was reassigned to the Acting Assistant Director for the Counterespionage Division. Defendant's Exh.. 3 at 16.

Even if Plaintiff had proper standing, her assertion that she lacked notice and was otherwise deterred from exercising her rights under the FMLA would still fail because she did not put the Agency on notice that her leave qualified under the FMLA. 29 C.F.R. § 825.302(c) requires employees to "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave…." In order to obtain FMLA-qualifying leave, the employee's serious health condition must make her "unable to perform the functions" of her position. 29 C.F.R. § 825.100(a). Plaintiff never articulated to Mr. Bell or Mr. Yamamoto that she was suffering from a serious health condition that rendered her unable to perform the functions of her job. Defendant's Exh. 21 at 13; Exh. 3 at 21, 22; Exh. 1 at 21. Without proper notice, the Agency lacked the wherewithal to provide Plaintiff with written notice explaining her expectations and obligations under the FMLA, nor could the Agency possibly have deterred the Plaintiff from exercising her rights under an Act for which she never even requested leave.

## CONCLUSION

For the reasons set forth above, Defendant Carlos Gutierrez, Secretary of Commerce, is entitled to dismissal of Plaintiff's claim under the Family Medical Leave Act and is entitled to summary judgment on all claims asserted by Plaintiff in this action. There are no genuine issues of material fact. This action should be dismissed in its entirety with prejudice.

Respectfully submitted,


___/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
CHARLOTTE A. ABEL, D.C. BAR # 388582
Assistant United States Attorney
555 4th St., N.W., Civil Division
Washington, D.C. 20530
(202) 307-2332

Agency Counsel:

Rebecca Pikofsky
U.S. Department of Commerce
Office of General Counsel
Employment & Labor Law Division
14th Street & Constitution Ave., NW, Room 5717
Washington, DC 20230