UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PARTHENIA RICHARDSON**, <br><br> Plaintiff, <br><br> v. <br><br> **CARLOS M. GUTIERREZ,** <br> **SECRETARY** <br> **U.S. DEPARTMENT OF COMMERCE** <br><br> Defendant. | Civil Action No. 06-00517 (ESH) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE**

Plaintiff Parthenia Richardson, by and through her undersigned counsel, hereby respectfully submits this Statement pursuant to Local Rule 7.1(h) and Rule 56 of the Federal Rules of Civil Procedure in support of Plaintiff's Opposition to Defendant's Motion to Dismiss and for Summary Judgment.

Plaintiff also respectfully refers the Court to the factual statements in Plaintiff's Opposition to Defendant's Motion to Dismiss and for Summary Judgment, which sets forth a detailed accounting of the facts in this case, disputed or otherwise. Notwithstanding the proceeding statement, Plaintiff further reserves the right to challenge Defendant's contentions concerning the undisputed facts in this case.

As set forth in Plaintiff's accompanying Memorandum of Points and Authorities, Plaintiff states a claim upon which relief can be granted and there are material facts in dispute. Accordingly, this case should proceed to discovery.

1. Ms. Richardson assumed her new position as the Supervisory Security Specialist, ZA-0080-V (GS-0080-15 equivalent), Assistant Director of the Counter Espionage Division, Office of Security (hereafter "OSY") on February 20, 2005. Am. Complaint at ¶ 10. Shortly thereafter, she met with Richard Yamamoto, her second-line supervisor of record and the Director of OSY, to discuss his expectations of her in her new position. Am. Complaint at ¶ 11. This meeting was much more than an introduction to the division. In fact, Mr. Yamamoto went through scenarios with Ms. Richardson detailing what she would encounter as a supervisor at OSY. Mr. Yamamoto instructed her to hold her subordinates accountable for their actions and to set OSY on the right path. Declaration of Parthenia Richardson, EEO Report of Investigation, Dated November 16, 2005, p. 3 and 5, (Hereinafter "Richardson Decl."), attached hereto as Exhibit 1.

2. Ms. Richardson, as the new supervisor, had a number of issues to address at OSY. For one, Mr. Yamamoto directed Ms. Richardson to inquire as to whether Ms. Carla Fisher was conducting adjudications. Richardson Decl. at p. 7. Ms. Richardson learned she was performing adjudications investigations even though her security clearance had been suspended in October 2004, a fact which had been noted in her personnel file well before Ms. Richardson's arrival. Ms. Richardson immediately informed Mr. Yamamoto. He asked her what should be done with Ms. Fisher. Ms. Richardson recommended that she be moved out of the office until her security clearance was no longer an issue.

      Richardson Decl. at p. 7. Ms. Richardson firmly believed that Ms. Fisher should have been moved in October 2004, when her security clearance was suspended but Robert Page, the Acting Division Director at the time, did nothing. Richardson Decl. at p. 7. Thus, the removal of Ms. Fisher became Ms. Richardson's responsibility and therefore, she became the person to "blame" for Ms. Fisher's removal from OSY.

3. Linda Guier and Susan Powers applied for the position for which Ms. Richardson was selected. Richardson Decl. at p. 5. From the onset of her tenure, Ms. Guier and Ms. Powers never gave Ms. Richardson a chance to be their manager. They did not like that she was there, telling them what to do. Id. Even Mr. Bell noticed this and directed them to find a way to work with their new manager. Richardson Decl. at p. 16. She held them accountable for their work when no one else would. Richardson Decl. at p. 5. When she held them to task, Ms. Powers and Ms. Guier filed complaints knowing that if they did, Mr. Yamamoto would respond, as was his modus operandi. Richardson Decl. at p. 6.

4. Despite Ms. Richardson's repeated attempts to address the outstanding and significant work-related issues which had been inadequately addressed in the past, Mr. Yamamoto would not support her in her management role and constantly undermined her. Am. Complaint at ¶ 14. She expressed her concerns in early June that management had not supported her and that the employees in the division did not have the basic tools needed to manage people and perform the duties they were assigned. Richardson Decl. at p. 6.

      Ms. Richardson told Mr. Yamamoto and Mr. Bell that she had inherited so many problems that she had been set-up for failure. Richardson Decl. at p. 13.

5. Whenever any of Ms. Richardson's subordinates had issues, management allowed them to circumvent her and come directly to them to complain. Am. Complaint at ¶ 15. Her subordinates refused to communicate with her and management enabled this behavior. Id.

6. Kari Reid testified that "the climate in the Office of Security is the worst [she has] seen in [her] nearly 20 years of US Government employment in terms of racial and gender discrimination." Declaration of Kari Reid, EEO Report of Investigation, Dated November 17, 2005, p. 4, (Hereinafter "Reid Decl."), attached hereto as Exhibit 2. She also testified that all women in OSY are routinely treated with a condescending attitude and Ms. Richardson was he only female in a top leadership position. Id. Furthermore, Mr. Yamamoto was demeaning to her and spoke to her "as if [she] were the lowest form of life on earth." Id. at p. 10. In contrast, males in the organization, regardless of experience or paygrade, will be spoken to by Mr. Yamamoto in a much more professional manner than any woman in the office. Id.

7. Delores PettyJohn, an African-American female, also noticed that Ms. Richardson was "set up" from the first day she began work at OSY because management was not ready for the changes she made and would not support her. Declaration of Delores PettyJohn, EEO Report of Investigation, Dated November 26, 2005, p. 3, (Hereinafter "PettyJohn Decl."), attached hereto as Exhibit 3. Based on her observations, Ms. Richardson was harassed and her

authority was questioned. Id. at p. 5. Ms. Richardson was the first Black female and Ms. PettyJohn did not see other managers treated that way. Id.

8. Sharrieff Nashid, an African-American male, also noted disparate treatment and that Ms. Richardson was treated differently than her predecessor, Alan Miline, in that he was allowed to carry out his duties "without having to go through such great approval" from Mr. Yamamoto. Declaration of Sharrieff Nashid, EEO Report of Investigation, Dated December 2, 2005, p. 4, (Hereinafter "Nashid Decl."), attached hereto as Exhibit 4. Ms. Richardson's position had never been previously held by a Black or a woman, and Mr. Nashid also experienced that he had to go through harder justifications than others do for his actions. Id. Based on his observations, most Blacks don't get the opportunity to be promoted to the position of Ms. Richardson, there are not any minority woman beyond the GS-13 level, and, throughout OSY, woman have not been promoted beyond GS-14. Id. at 6.

9. James Van Brunt volunteered to go on active duty to escape the hostility in the office. Richardson Decl. at p. 14.

10. Ms. Richardson made initial contact with Bernadette M. Worthy on June 6, 2005, to voice her concerns regarding management's disparate treatment and to file an EEO complaint. See EEO Memorandum dated August 31, 2005, attached hereto as Exhibit 5. This date was not on June 20, 2005, as Defendant's asserts in its Motion for Summary Judgment.

11. In retaliation for filing her complaint, on July 11, 2005, management gave Ms. Richardson a less than favorable review and informed her that they decided to

remove her from her supervisory position. Am. Complaint at ¶¶ 22-25. Management stripped her of her supervisory duties and relegated her to a non-existent position. Id. Once she was finally assigned duties, the duties were those of a lower level GS position. More specifically, the Agency assigned her to work on the Declassification project. Richardson Decl. at p. 18. The Declassification project was one which Ms. Richardson had identified at the beginning of her tenure as completely off track and unlikely to be completed by the deadline. Id., see also Richardson Decl. at p. 5. Moreover, she had specifically informed Mr. Yamamoto that nothing had been worked on for the last two years. Id. Mr. Yamamoto assigned this project to Ms. Richardson because he knew it was doomed to fail.

12. The Agency relocated Ms. Richardson from her office to a cubicle that was far inferior to what was appropriate for someone of her GS-15 level. Am. Complaint a ¶ 25. Moreover, right before Ms. Richardson departure, the Agency made plans to enlarge the office where it had located Ms. Richardson in order to accommodate a GS-15. Richardson Decl. at p. 18.

13. On July 19, 2005, Ms. Richardson had surgery and through August 2005, due to complications arising from the surgery, was intermittently on sick leave. Am. Complaint at ¶ 28 and ¶ 30. During this time period, while she was recuperating, management harassed Ms. Richardson and continued to retaliate against her for filing the EEO complaint. Am. Complaint at ¶¶ 28-31. In fact, on the same day she was scheduled for surgery, Mr. Bell harassed Ms. Richardson by e-mailing her to request that she call him about a certain file.

Am. Complaint at ¶ 28. Shortly thereafter, on July 21, 2005, Mr. Bell, once again, e-mailed her. Id. at ¶ 29. He requested that she have the Declassification Action Plan completed immediately upon her return, implying that she would have to work while out on sick leave. Id.

14. On July 27, 2005, Ms. Richardson learned from her physician that she had developed complications from the surgery and that she could not go back to work as originally planned. Am. Complaint at ¶ 30. Once again, Mr. Bell harassed and retaliated against Ms. Richardson by e-mailing her on August 1st about work related issues during her sick leave, causing her an enormous amount of stress. Id. at 31.

15. On August 17, 2005, Ms. Richardson requested a reasonable accommodation due to the high level of stress and anxiety caused by the harassment and the fact that she lost her job duties and responsibilities in retaliation for filing her EEO complaint. Am. Complaint at ¶ 39. Again, in retaliation, Mr. Bell denied her request and informed her, that in his opinion, she was not under any stress because she was no longer responsible for her GS-15 position. Id.

16. Fearing for her health and unable to endure any further retaliation by Mr. Bell and Mr. Yamamoto, Ms. Richardson tendered her resignation on August 30, 2005.  Am. Complaint at ¶ 41.

Dated: December 11, 2006                Respectfully submitted,


　　　　　　　　　　　　　　　　　　　_____/s_____
　　　　　　　　　　　　　　　　　　　Camilla C. McKinney, Esq.
　　　　　　　　　　　　　　　　　　　Law Offices of Camilla C McKinney, PLLC
　　　　　　　　　　　　　　　　　　　1100 Fifteenth Street, N.W., Suite 300
　　　　　　　　　　　　　　　　　　　Washington, D.C.  20005
　　　　　　　　　　　　　　　　　　　(202) 861-2934/(202) 514-9111 (fax)
　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff Parthenia Richardson