# PLAINTIFF'S EXHIBIT 4

## DECLARATION OF MR. SHARRIEFF NASHID

Ms. Parthenia Richardson

     v.                                  Agency Case No. 05-51-00166

U.S. Department of Commerce

I, Sharrieff Nashid, pursuant to 28 U.S.C. § 1746, hereby declare:

I understand that this is the claim accepted for investigation:

Complainant, formerly the Assistant Director for Counter Espionage, GS-15, Office of Security, Office of the Secretary, Department Of Commerce alleges that she has been subjected to a continuous pattern of discrimination and harassment constituting a hostile work environment due to her race (Black) and sex (female). She cites the following:

1. During the period of May to June 2005, Richard Yamamoto did not support her as a supervisor and challenged her employment actions, despite her having obtained guidance from the Office of Human Resources and the Office of General Counsel.

2. In June 2005, Yamamoto took away her ability to make supervisory decisions, including hiring selections.

3. Since June 2005, Yamamoto requires her to meet him on a weekly basis for 30 minutes to discuss supervisory decisions and duties.

4. During the period of May to June 2005, Yamamoto failed to provide her any positive feedback, despite receiving positive feedback from two major clients, and also failed to openly acknowledge her contributions to the organization.

5. During the period of April to June 2005, Yamamoto undermined her authority with staff by allowing them to come directly to him with their concerns and siding with them on controversial matters without first obtaining her rationale for employment decisions and actions.

6. In May 2005, Yamamoto allowed her Caucasian male counterparts and subordinate staff to communicate with her in a disrespectful and condescending manner.

7. During the period of April to May 2005, Yamamoto treated her with hostility and openly challenged any statements she made in staff meetings and other open forums.

1 of 10                                                                                                Initials

8. On June 1, 2005, Yamamoto told her that he, his colleagues, and his staff did not have confidence in her ability to manage, and added that while he had received outstanding recommendations from previous supervisors and was excited about her coming on board, he now had doubts. At that time, Yamamoto also stated that he had no more "blue chips" available, and that he has used them all up.

Complainant also alleges retaliation for having engaged in the EEO complaint process when:

9. On July 11, 2005, she was informed by Dave Bell, Acting Deputy Director, Office of Security, that effective July 12, 2005, she was being temporarily reassigned from her position as Assistant Director for the Counter Espionage Division for a period of 120 days. She also learned that Thomas deSeve, a Caucasian male counterpart, was assigned to assume her responsibilities while continuing his current responsibilities.

10. On July 11, 2005, Bell gave her a mid-year counseling that was less than favorable and cited items/issues that were inaccurate.

11. On July 11, 2005, she was informed that she was to move out of her office so that deSeve could occupy my space. She contends that deSeve already had adequate space, which would have allowed him to effectively manage both his pre-existing duties and the duties reassigned to him. She further contends that Linda Guier and Susan Powers, two Caucasian, GS-14 female managers, were reassigned from under her supervision on May 9, 2005, yet were not required to relocate.

12. She was required to move to a workspace where GS-14 employees had better accommodations.

13. The duties given to her on her reassignment are GS-11 and GS-12 duties.

14. On August 17, 2005, she spoke to Bell and requested reasonable accommodation, as recommended by her physician for stress and Bell commented, "You are not under any stress, we just moved you from stress."

15. As a result of the refusal to comply with her request concerning the stress and to escape the hostile work environment, she "submitted an involuntary termination" (i.e., constructive discharge) on September 6, 2005.

*Would you please identify yourself by race?*

Response: Black American.

*Are you a Special Agent In Charge in the Executive Protection Program, Anti-Terrorism Division?*

Response: It's actually the Secretary's Protection and Investigation.

*You're a Security Specialist, ZA-0080-04?*

Response: Yes.

*How long have you held this position?*

Response: Since 2001.

*How long have you worked in OSY?*

Response: Since April 1999.

*During what period of time was Mr. Bell your supervisor?*

Response: From late 2003 until about early 2005.

*For whom do you now work?*

Response: Anthony Mira.

*Why did you offer Mr. Bell and/or Mr. Page a recommendation for Ms. Richardson?*

Response: I knew her from the Department of Homeland Security and based on seeing her work environment and knowing what we needed in that position, I thought she'd be a good match. We constantly have turnover in that position.

*How did you know she was being considered for the position?*

3 of 10                                                                 Initials [signature]

                                                                                      12    3

Response: There was a cert list and they asked me what I knew about her. I told them. She was also highly recommended by one of Rich Yamamoto's former bosses, before he came to Commerce, a General in the Army.

*Was there constant turnover in that position or in the Counterespionage Division?*

Response: In the superviisiory position.

*What specifically did you tell Mr. Page and Mr. Bell in recommending Ms. Richardson for the position?*

Response: I stated I felt she was very professional, that she would raise morale in that division and that she matched many of the qualifications for that position.

*Did race come up or do you think Mr. Bell and Mr. Page were aware of her race?*

Response: Mr. Yamamoto and Mr. Bell were really the only two I spoke with.

*Did they ask you about her race or do you think they were aware of it?*

Response: They didn't ask and I don't think they were aware. They had already ascertained quite a bit of information from Mr. Yamamoto's former boss, who she had worked for.

*Do you have reason to believe Ms. Richardson was harassed?*

Response: She was treated differently than her predecessor, Alan Milne.

*How was she treated differently?*

Response: She came into a unit that was very disorganized. She was trying to do what was outlined to her. Her recommendations fell on deaf ears. Her predecessor did what he wanted to do without having to go through such great approval.

*Why do you believe she was treated differently?*

Response: I don't know. The only thing I'd say is that a Black never served in that position before. That's the only thing I can look at. A female never served in that position before either.

*Would Mr. Yamamoto and Mr. Bell discriminate based on race and sex?*

Response: To some degree, me being Black, I go through much harder justifications than others. I think similar things affected Ms. Richardson in her position.

*Do you have direct knowledge of Ms. Richardson's treatment by Mr. Yamamoto and Mr. Bell?*

Response: No, not direct knowledge.

*How did you become aware of her treatment?*

Response: Everyone in the Office of Security knew they were going to push her out or that she would be reassigned until she found employment outside the office.

*Who knew?*

Response: It was being talked about from clerks to managers; it was rampant.

*Was any reason given by those who were talking about it for why she would be forced out?*

Response: Some were saying she was incompetent. Some said they no longer wanted her here.

*Who was saying she was incompetent?*

Response: Different managers. It was just talked about in the office.

*Was any reason given for why she was considered incompetent or why she was not wanted there?*

Response: The statement of incompetence came across by upper management. When management here doesn't want to comply or doesn't want an investigation, they come up with statements about incompetence.

*Has management done this to others?*

Response: Yes. We've had people pushed out of here because of age discrimination. There have been several people pushed out because of race, age, and sex.

*What race would be pushed out?*

Response: Most Blacks don't get to the position of Ms. Richardson. She was the first Black female to hold that position. To this day, we don't have any minority women beyond the GS-13 level throughout OSY. I'm the only Black that's been in my position.

*Are females generally being pushed out?*

Response: Women have not been promoted beyond GS-14. We have only one who is a GS-14.

*Can you give me any names of those who have been forced out?*

Response: Frank Silver, based on age. He had a lawsuit against the Department that was settled. Lee Ballard, based on a combination of a couple of things; age and not knowing how to perform his job.

*What is Mr. Silver's race?*

Response: He's a Caucasian male.

*What is Mr. Ballard's race?*

Response: He is a White male.

*Why would Mr. Bell and Mr. Yamamoto hire Ms. Richardson in February and then stop supporting her just a couple of months later?*

Response: She brought things to their attention that needed to be corrected.

*Wasn't that what she was hired to do?*

Response: Yes, but anytime you do not go along with management's objectives you become a target or are alienated.

*Do you think that's what happened with Ms. Richardson?*

Response: Yes.

*How did she not go along with management's objectives?*

Response: Based on conversations with her, she wanted to deal with morale, dress attire, organization planning. It didn't go through. She wanted to bring in new employees and was side-walled until she left. She was able to select only one person. I know, for a fact, that when you go against management there is retaliation. Even for myself divulging what I'm stating here, management will be taking a strong, aggressive approach with me.

*Let me explain that I am a contract Investigator, I do not work for the agency, and I have not told anyone in management who I would be speaking with. I am not speaking with you onsite and my report will be sent to the EEO Office. Ms. Richardson will receive a copy and it may also be seen by the Office of General Counsel, if the case is appealed by Ms. Richardson for a decision. Management does not get a copy of the report and should not be aware of who spoke with me.*

Response: Things are done very tactfully here, very subtly. The environment becomes hostile for a person to work in.

*Have you ever filed an EEO complaint yourself?*

Response: No, but I came close to it. I have spoken to Bonnie Worthy at times about things that were done to me. But, with me, they would step back and that precluded me from taking the next step.

*Did you see Ms. Richardson's Caucasian male counterparts and subordinate staff communicate with her in a disrespectful and condescending manner?*

Response: No.

*To your knowledge, were her subordinates and clients complaining about their treatment by Ms. Richardson?*

Response: Not to my knowledge.

*In a mid-year counseling Ms. Richardson received from Mr. Bell, he noted: she was responsible for the loss of key individuals, specifically Ms. Herbert and Mr. Bodin; her employees were actively seeking other employment; a temporary employee from Suitland asked to be returned there; morale in the division was at an all time low; her managers lost confidence in her ability to manage; she failed to meet with the director on a weekly basis; her communication skills were rude, harsh, and dictatorial; field offices had complainted; she changed policy without approval; she failed to take responsibility for deficiencies in the division and attributed them to others.*

8 of 10                                                                                   Initials

Response: I spoke to Ms Richardson and all those people you mentioned intended to leave before Ms. Richardson was even interviewed. Her coming had no impact on their decision to leave.

*Do you believe Ms. Richardson was given a poor performance counseling, reassigned to duties as a Special Projects Officer and relocated to the Anti-Terrorism Division to force her to leave?*

Response: Most definitely.

*Would they force her to leave because she had filed an EEO complaint?*

Response: Yes. I think she was making just too much noise for them and showing where OSY was weak in management areas. They didn't want that to be shown.

*Did Mr. Bell make any announcement to the Anti-Terrorism Division concerning Ms. Richardson's detail to Special Projects Officer and her physical relocation to space in the Anti-Terrorism Division?*

Response: He actually stated she was being detailed and would be working for him on a special project. That was pretty much it.

*When you spoke earlier about coming close to filing an EEO complaint, were the problems you were having based on actions Mr. Bell was taking?*

Response: Mr. Bell and Mr. Yamamoto.

*What did you believe was the basis for their treatment of you; on what basis did you believe they were discriminating?*

Response: Race more than anything else.

Is there anything else you want to add?

Nothing I can think of right now.

I have read the above statement consisting of _____ pages. I declare under the penalties of perjury that my statement is true, correct and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____          Executed on: 12-2-05
Sharrieff Nashid