UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARTHENIA RICHARDSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CARLOS M. GUTIERREZ, )<br>Secretary, U.S. Department of Commerce, )<br>)<br>)<br>Defendant. )<br>) | Civil Action No. 06-00517 (ESH) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Defendant, Carlos Gutierrez, in his capacity as Secretary, United States Department of Commerce ("Defendant" or "Agency"), respectfully submits this reply in support of his Motion to Dismiss and for Summary Judgment ("Defendant's Motion"), and in response to Plaintiff's Opposition to Defendant's Motion ("Opposition").

Plaintiff raises no dispute of material fact to support proceeding with her Amended Complaint ("Complaint") on her retaliation claim under Title VII, thereby requiring entry of judgment for Defendant on Count I. Furthermore, Plaintiff does not contest Defendant's argument that she lacks standing to proceed with her claim under the Family Medical Leave Act of 1993 and states that she will not pursue said claim. Accordingly, Count II of Defendant's Complaint must be dismissed.

## **ARGUMENT**

Plaintiff does not at any point in her Opposition, supply evidence – or even suggest that such evidence exists – to support a *prima facie* case of retaliation or demonstrate that there exists a genuine dispute of material fact for trial.  Nonetheless, she suggests that she should be permitted to bypass establishing her *prima facie* case, and obtain discovery to establish pretext.  Plaintiff's Opposition at 14.  Plaintiff has failed to supply support for this request, and instead asks this Court to ignore the volumes of evidence already on record demonstrating that Plaintiff has neither suffered an adverse action nor proven that there exists a causal connection between her Equal Employment Opportunity ("EEO") activity and the temporary detail she claims constitutes the alleged adverse action.[1]

A.  **Plaintiff's reliance on <u>Kalinoski v. Gutierrez</u>, is inapposite, and does not support Plaintiff's claim that she has established a *prima facie* case of retaliation.**

Plaintiff's claim that she suffered an adverse action when she was <u>detailed</u> – not demoted – in short, is premised on the following allegations:  that she was allegedly assigned to a "non-existent" position; was stripped of her management authority; was assigned duties belonging to GS-11 or 12 employees; and was forced to work in a substandard office.[2]  <u>See</u> Plaintiff's Opposition at 23-24.  These claims amount to nothing more than Plaintiff's own subjective belief about the ramifications of her detail,

---

[1] The sole claim in Plaintiff's Complaint alleges that Defendant retaliated against her after she filed a complaint with the EEO Officer, and temporarily detailed her to another position. While Plaintiff's administrative complaint and occasional references in her Opposition to Defendant's Motion make mention of alleged harassment and hostile work environment, Plaintiff has not brought formal claims of either kind. Accordingly, Defendant will not address those allegations, but reserves the right to do so in the event this Court deems them actual claims in the instant case.

[2] Of note, after Plaintiff resigned, another GS-15 supervisor was moved into that space. <u>See</u> Ex. 3 at 19 (Bell Declaration).

2

which is insufficient to establish that Defendant committed an adverse action. See Defendant's Motion at 24 (citing Jordan v. Evans, 355 F. Supp.2d 72, 80 (D.D.C. 2004)).

Plaintiff's detail did involve, in part, the performance of certain duties that had previously been assigned to GS-12 and GS-13 employees, but the reason for assigning her such duties was that management recognized that they were tasks which GS-12 and 13 level employees were incapable of performing efficiently, thereby requiring that they be assigned to senior employees like Plaintiff. See Ex. 3 at 15 (Bell Declaration). Moreover, management makes no secret of the fact that they had concerns about Plaintiff's overall performance, and that her detail was designed to help her succeed at the Agency. See e.g., Ex. 1 at 6, 15-16, 23 (Yamamoto Declaration); Ex. 3 at 5, 10-11 (Bell Declaration). While Plaintiff may believe that her new duties were beneath her and adverse, the record is clear that they were neither and that Defendant had legitimate non-discriminatory reasons for tasking her with certain duties that were initially assigned to GS-12 and 13 employees.

Plaintiff relies heavily on Kalinoski v. Gutierrez, 435 F. Supp.2d 55 (D.D.C. 2005) in arguing that she has established a *prima facie* case of retaliation, but the facts in Kalinoski are distinguishable from those in the instant case, and therefore those arguments must fail. Unlike the employee in Kalinoski, Plaintiff was not permanently stripped of her supervisory duties, but instead was "detailed as Special Projects Officer and given GS-15 equivalent work to provide her an opportunity to succeed in another assignment with OSY." See Ex. 1 at 6 (Yamamoto Declaration)(emphasis added). That detail – which by definition is temporary – was explicitly ordered for a period of 120 days, and cannot be deemed an adverse action. See Smith v. The District of Columbia, 271 F. Supp.2d 165, 173 (D.D.C. 2003)(holding "temporary reassignment without

3

diminution in pay or benefits is not an adverse action"). Also, Plaintiff was in her supervisory probationary period – a time when her rights/expectations with regard to retaining supervisory responsibility were substantially lower than Kalinoski's were, after several years as a supervisor.

While Plaintiff is correct that in <u>Kalinoski</u>, the employee's claims that she "suffered a loss of advancement potential" and "was effectively moved down within the agency hierarchy because she no longer reported directly to a presidentially appointed Senate-confirmed office," were noted by the court as lending "<u>some</u> credence to the argument that plaintiff suffered materially adverse consequences as a result of the reassignment," <u>see</u> Plaintiff's Opposition at 22 (emphasis added); Plaintiff overlooks the Court's criticism that the "<u>proof</u> offered in support [was] merely speculative." <u>Kalinoski</u>, 435 F. Supp.2d at 65. Similarly speculative as the latter two claims in <u>Kalinoski</u>, is Plaintiff's claim that delaying her probationary period by 120 days, resulted in her "career com[ing] to a complete standstill." Plaintiff's Opposition at 23. Moreover, that Plaintiff chose to resign from her position before the detail concluded was not of the Agency's making, and thus the Agency cannot be responsible for Plaintiff's decision to abandon her detail and leave the Agency, and deny <u>herself</u> the opportunity to succeed under the detail.

**B.   Plaintiff has not established a causal connection between her EEO activity and her detail.**

Even if, however, Plaintiff's detail is deemed an adverse action, Plaintiff cannot establish that a causal connection exists between her EEO activity and the detail. While Plaintiff claims that she contacted the EEO counselor on June 6, 2005, the record is replete with evidence that Defendant was not informed of her EEO activity until much

4

later that month.     In fact, Plaintiff states in her own declaration that <u>she</u> believed Mr. Yamamoto was not advised by EEO until June 26 – not between June 6 and June 20,[3] as she now suggests in opposition to Defendant's Motion.  <u>See</u> Plaintiff's Opposition at 9; Complaint at ¶ 19.

Plaintiff is correct that Defendant did not ultimately detail her until July 11, 2005, but her claim that because the detail was implemented after she contacted EEO she has established a causal connection between the two events, cannot survive.  Plaintiff's argument ignores well-settled case law that where an employer makes a decision to take the alleged adverse action prior to knowing of the protected activity, there can be no causal connection between the two events.  <u>See</u> Defendant's Motion at 25-26 (discussing <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268 (2001); <u>McKenna v. Weinberger</u>, 729 F.2d 783, 791 (D.C. Cir. 1984)); <u>see also</u> <u>Gaston v. Miami-Dade County</u>, 2003 U.S. Dist. LEXIS 22090, *12 (S.D. Fla. 2003)(finding "no causal connection between the two incidents since the decision to fire Plaintiff was made prior to any knowledge of Plaintiff's protected activity").   And contrary to Plaintiff's contention that "the Agency provides no documentation that Ms. Richardson's detail was 'in the works' before she contacted the EEO in early June," the Agency's Human Resources Specialist[4] states in his declaration that he "spoke with Mr. Bell and Mr. Yamamoto in **early June 2005** regarding their desire to detail Ms. Richardson to the Special Projects Officer duties"; <u>see</u> Ex. 13 at 5 (Jamison Declaration)(emphasis added); and those conversations continued later in the month over email.  <u>See</u> Ex. 2, Attachment. 1 (Yamamoto

---

[3] In response to the investigator's question, "Do you know when and how Mr. Yamamoto and Mr. Bell became aware you alleged discrimination in your treatment by Mr. Yamamoto?": "I believe it was on June 26.  The EEO Counselor told me she forwarded my concerns to management."  Ex. 8 at 15 (Richardson Declaration).

[4] Contrary to Plaintiff's assertion in her Rule 56(f) affidavit, supplied by Plaintiff's counsel, James Jamison is not an EEO counselor.  <u>See</u> Plaintiff's Rule 56(f) Affidavit at ¶7.

5

Declaration – Email with Jay Jamison, dated **June 17, 2005** discussing detail).  Plaintiff's unfounded belief to the contrary is not sufficient to defeat the affidavit testimony of two Agency individuals and does not create a dispute of material fact.

Plaintiff also believes that there exists a dispute as to when the EEO counselor informed management of Plaintiff's discrimination allegations, see Plaintiff's Opposition at 28.  Plaintiff again offers no support other than her own subjective belief to support this contention, and provides no explanation as to why discovery from the EEO Counselor is needed on this point, when the record speaks for itself.  The EEO Counselor's own memorandum states that she contacted Mr. Yamamoto on **June 20, 2006 -** after management had decided to detail Plaintiff.  See Ex. 18 at 2, ¶ D.  Defendant can think of nothing more conclusive than such evidence.

C.    **Even if Plaintiff has established a *prima facie* case of retaliation, the record is replete with evidence that Defendant's decision to detail Plaintiff was for legitimate non-discriminatory reasons.  Plaintiff has supplied no evidence or allegations to demonstrate the existence of pretext or justify proceeding with discovery to develop the same.**

Assuming *arguendo* that Plaintiff has met her burden to establish a *prima facie* case, she supplies no basis to demonstrate that Defendant's reason for detailing her was pretextual.  In order for Plaintiff to establish pretext, it is Plaintiff's burden to come forward with "'affidavits or other competent evidence showing that there is a genuine issue for trial.' To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'" Hastie v. Henderson, 121 F. Supp.2d 72, 77 (D.D.C. 2000) (internal citations omitted).  "[E]vidence of discrimination or pretext that is 'merely colorable' or 'not significantly probative' cannot prevent the issuance of summary judgment." Id.

6

Plaintiff concedes that she cannot supply evidence of pretext, and her pretext claims – like her claim that she has established a *prima facie* case of retaliation – amount to little more than conclusory allegations. Nonetheless, Plaintiff asks that this Court allow her to proceed with discovery so as to build a case on pretext, advising the Court *inter alia* – without identifying any individuals – that "[e]vidence of Mr. Yamamoto's preferential treatment of comparators will support the fact that Mr. Yamamoto's reasons for her reassignment or demotion were pretext to hide his retaliatory intent." Plaintiff's Opposition at 15 (emphasis added). To grant such a request would be to sanction a fishing expedition for Plaintiff to search for what she should already have at this stage – a *prima facie* case and evidence of pretext. Summary judgment is intended precisely to avoid such expeditions. See Elias v. New York City Transit Authority 1997 U.S. Dist. LEXIS 5593, *10 (S.D.N.Y. 1997)(noting same).

Plaintiff also advises the Court that additional discovery is needed from three former colleagues – each of whom submitted a declaration at the administrative stage of the proceedings. See Plaintiff's Opposition at 33 (identifying Kari Reid, Delores PettyJohn, and Sharrieff Nashid). Those three employees, however, do nothing to bolster Plaintiff's retaliation claim, as these individuals were not even able to establish to the EEO investigator that they have first hand knowledge of Plaintiff's basic allegations (i.e.: the alleged change in duties, change in office, and treatment by management).

Kari Reid attests that with regard to the new assignments given to Plaintiff on her detail, that she had "heard it was some project that [another employee] had worked on previously, but [she] didn't know what it was." See ROI Ex. 9 at 14. Ms. Reid's statements are clearly based on hearsay, and accordingly are "incompetent to imply any discriminatory motivations" on the part of management. See Matta v. Snow, 2005 U.S.

7

Dist. LEXIS 36194, *70-71 (D.D.C. 2005)(granting summary judgment; finding plaintiff's reliance on testimony regarding what second-line supervisor told him constituted hearsay and was insufficient to overcome summary judgment).  Moreover, testimony from management reflects that the reason for Plaintiff's physical move from one office to another had to do with the access to and location of certain sensitive files maintained in a safe in Plaintiff's first office, see Ex. 1 at 6 (Yamamoto Declaration).  Ms. Reid attests that she had "no idea" why Plaintiff was relocated.  See ROI Ex. 9 at 15.

Delores PettyJohn admits in her declaration that her beliefs about how Plaintiff was treated by management are largely based not on first hand knowledge and experience, but rather on conversations which Ms. PettyJohn claims she had with Plaintiff – making her beliefs based on hearsay as well.  See ROI Ex. 10 at 4.  Ms. Reid also affirmatively states that she has no knowledge of reprisal by management.  See ROI Ex. 10 at 9.  Sharrieff Nashid admits that he has no direct knowledge of how Mr. Yamamoto and Mr. Bell treated Plaintiff, stating that his belief of alleged adverse treatment was based on the "scuttlebutt" (i.e.: hearsay) of the office.  See ROI Ex. 12 at 5.

Plaintiff and two of the above-identified declarants also observe that Plaintiff was the "first and only African-American female to serve as the Assistant Director of the Counter Espionage Division." See Plaintiff's Opposition at 4; PettyJohn Declaration (ROI Ex. 10 at 5); Nashid Declaration (ROI Ex. 12 at 5).  While certainly notable, that fact is of no consequence to establishing a *prima facie* case of retaliation or pretext.  Plaintiff was hired and detailed by the same management individuals, primarily Mr. David Bell, thus giving rise to "a permissible inference that no discriminatory animus

motivated defendant's actions"; and defeating Plaintiff's suggestion to the contrary.[5]  See Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 12 (D.D.C. 2000).[6]

Despite the lack of probative testimony offered in their declarations, Plaintiff still claims that "discovery is necessary to obtain information from these witnesses and to expand upon their observations." See Plaintiff's Opposition at 33.  Given, however, the lack of probative testimony offered by these individuals in their declarations, Defendant sees no benefit to allowing Plaintiff to propound fruitless discovery on them.

Plaintiff's insistence that summary judgment ought not be granted, because discovery is needed, is based on the premise that her "ability to prove pretext is heavily dependent upon witness testimony, credibility issues and other evidence requiring discovery." Opp. at 14.  To defeat summary judgment, however, Plaintiff must now come forth with some degree of evidence to support her pretext argument.  See Price v.

---

[5] David Bell was the selecting official who hired Plaintiff, and while he "acted in concert with the Director [Richard Yamamoto], [he] was her supervisor and it was ultimately [his] decision [to counsel, reassign and relocate her]." See Ex. 3 at 4, 22.

[6] Id. citing e.g., Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1441 (11th Cir. 1998) (where same individual was responsible for hiring, promoting, and ultimately terminating plaintiff, "these facts may give rise to a permissible inference that no discriminatory animus motivated defendant's actions"); Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2nd Cir. 1997), cert. denied, 525 U.S. 936 (1998) (affirming summary judgment and noting that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire," especially "when the firing has occurred only a short time after the hiring"); EEOC v. Our Lady of the Resurrection Med. Center, 77 F.3d 145, 152 (7th Cir. 1996) (affirming summary judgment and finding presumption of non-discrimination where same manager hired and fired plaintiff within 10-month period); Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270-71 (9th Cir. 1996) (affirming summary judgment and finding "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive"); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996) (affirming grant of summary judgment and adopting "same actor inference" where same individual hired and fired plaintiff over four-year period); Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) (affirming summary judgment and noting "because Houseman is the same person who hired Evans, there is a powerful inference that the failure to promote her was not motivated by discriminatory animus."); Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir. 1995), cert. denied, 516 U.S. 1078, 133 L. Ed. 2d 736, 116 S. Ct. 785 (1996) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification.").

9

Greenspan, 374 F. Supp. 2d 177 (D.D.C. 2005)(holding "Summary judgment may be granted to a Title VII or ADEA defendant who presents uncontroverted evidence that its employment decisions were made for nondiscriminatory reasons, because it is the plaintiff who must 'create a triable question of pretext.'")(citing inter alia, 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 26 (3d ed. 1996); see also Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (holding "that, when evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case").  Plaintiff, however, offers no evidence challenging the declarations of the Agency employees who set forth nondiscriminatory reasons for Plaintiff's detail.

**D.    Plaintiff's Opposition Memorandum Effectively Concedes That Her FMLA Claim Must be Dismissed.**

It is well settled that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded." Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F.Supp.2d 174, 178 (D.D.C. 2002)(citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1987); see also Bancoult v. McNamara, 227 F.Supp.2d 144, 149 (D.D.C. 2002); Stephenson v. Cox, 223 F. Supp.2d 119, 121 (D.D.C. 2002)(finding "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

Defendant articulates an irrefutable basis for dismissing Count II of Plaintiff's Amended Complaint, which alleged that the Agency violated the Family and Medical Leave Act (FMLA) by failing to provide notice of her right to take FMLA leave and by

interfering with, restraining, and denying her the exercise of her rights under the FMLA. See Defendant's Motion at 30-33 (demonstrating that Plaintiff lacks standing to survive a motion to dismiss Count II of her Amended Complaint, as Plaintiff has suffered no injury in fact). While Plaintiff states that she believes she could prevail on this count, she nonetheless does not attempt to counter Defendant's argument, and instead states that she will not pursue it. Accordingly, Count II of the Amended Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendant's Motion, Defendant requests that this Honorable Court grant judgment in favor of the Defendant on Count I of Plaintiff's Amended Complaint, and dismiss with prejudice, Count II.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR
D.C. Bar No. 498610
United States Attorney

/s/
RUDOLPH CONTRERAS
D.C. Bar No. 434122
Assistant United States Attorney

/s/
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 307-2332

Of Counsel:
ALLISON J. BOYLE
Agency Representative
U.S. Department of Commerce
Office of the General Counsel
Employment & Labor Law Division
14th and Constitution, N.W.
Washington, D.C. 20230