# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                )
**PARTHENIA RICHARDSON,**        )
                                )
             **Plaintiff,**      )
                                )
        **v.**                   )    **Civil Action No. 06-00517 (ESH)**
                                )
**CARLOS M. GUTIERREZ, Secretary,** )
**U.S. Department of Commerce,** )
                                )
             **Defendant.**      )
_____)

## MEMORANDUM OPINION

Plaintiff has sued the secretary of the Department of Commerce ("DOC") for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (2006) ("Title VII"), and for violation of the Family and Medical Leave Act of 1993 ("FMLA"), § 105(a)(1), 29 U.S.C. § 2615(a)(1) (2006). The matter comes before the Court on defendant's "Motion to Dismiss and for Summary Judgment." Because plaintiff has abandoned her FMLA claim (*see* Opp. at 1 n.1), defendant's motion to dismiss that claim will be granted. *See* Fed. R. Civ. P. 41(b). For the reasons stated herein, defendant's motion for summary judgment on plaintiff's retaliation claim will be denied without prejudice.

## BACKGROUND

Plaintiff is an African-American female who, in February 2005, was laterally transferred from her GS-14-equivalent position as a security specialist for the Department of Homeland Security to a GS-15-equivalent position as assistant director of the Counterespionage Division within the DOC's Office of Security ("OSY"). (*See* Am. Cmpl. ¶ 4; Def.'s Stmt. ¶ 5 & n.3; Pl.'s Stmt. ¶ 1.) Plaintiff was interviewed for her new position by David Bell and Robert Page.

(Def.'s Stmt. ¶ 4.)  She was selected based on Bell's recommendation to Richard Yamamoto, OSY's director of security.  (*Id.*)

According to plaintiff, although Yamamoto "seemed supportive at first," he soon began to "undermine[] her authority" in various ways.  (Opp. at 32; *accord* Am. Cmpl. ¶ 14; Pl.'s Stmt. ¶ 4.)  In response, plaintiff contacted Bernadette Worthy, an equal employment opportunity ("EEO") counselor, to complain that "she was being subjected to a pattern of discriminatory treatment" based on her race and gender.  (Pl.'s Ex. 5 at 1; *accord* Am. Cmpl. ¶ 19.)  Construing the record in the light most favorable to plaintiff, plaintiff's initial contact with Worthy may have occurred as early as June 6, 2005.  (*See, e.g.*, Pl.'s Ex. 5 at 1 (stating that plaintiff contacted Worthy with concerns of discrimination on June 6, 2005); Pl.'s Stmt. ¶ 10 (same); Opp. at 9 (same).  *But see* Pl.'s Ex. 5 at 1 (summary of plaintiff's EEO activity listing her "initial contact" as June 20, 2005); Def.'s Ex. 18 at 19 ("On June 20, 2005, [plaintiff] initially contacted the Office of Civil Rights with [her] concerns of workplace discrimination."); *accord* Def.'s Ex. 29 at 1; Am. Cmpl. ¶ 19.)

On June 20, 2005, plaintiff requested alternative dispute resolution ("ADR").  (*E.g.*, Pl.'s Ex. 5 at 2.)  On that same date, Worthy informed Yamamoto of plaintiff's EEO concerns and request for ADR.  (*Id.*)  One week later, Yamamoto "acknowledged the request and referred [Worthy] to . . . Bell . . . to discuss possible resolution."  (*Id.*)  On July 5, 2005, OSY authorized Worthy to make plaintiff an offer of resolution.  (*Id.*)  The next day, plaintiff declined OSY's offer and asked to move forward with the EEO process.  (*Id.*)

Five days later, on July 11, 2005, Bell conducted a mid-term counseling session with plaintiff in which plaintiff received an unfavorable review.  (*See, e.g.*, Def.'s Ex. 1 ["Yamamoto

Decl."] at 52 (attaching Bell's assessment of plaintiff's performance deficiencies); Pl.'s Stmt. ¶ 11 ("[O]n July 11, 2005, management gave Ms. Richardson a less than favorable review . . . .").)  Bell also informed plaintiff that, for a period of 120 days, she would be reassigned from her position as assistant director of the Counter Espionage Division to the position of "special projects officer."  (*See* Am. Cmpl. ¶ 22; Def.'s Stmt. ¶ 26.)

Plaintiff's new position had no formal job description.  (*See, e.g.*, Pl.'s Ex. 1 at 19 ("I was never provided any written duty description."); Pl.'s Ex. 5 at 3 (stating that plaintiff was given no specified duties).)  However, defendant does not contest that plaintiff was deprived of all supervisory authority and was instead given responsibility for discrete projects.  (*See, e.g.*, Def.'s Stmt. ¶ 26 ("[Plaintiff] was assigned special projects including a declassification project and the Homeland Security Presidential Directive (HSPD)-12 project."); Reply at 3 (emphasizing that plaintiff was "not *permanently* stripped of her supervisory duties," but never arguing that plaintiff retained management authority).)  Furthermore, the parties agree that, although plaintiff did not suffer any loss of pay, grade, or benefits, some of her new responsibilities had previously been assigned to lower-level employees.  (*See, e.g.*, Pl.'s Ex. 1 at 18 ("[My new duties] were the duties of [a] failed . . . GS-12 Information Security Specialist[] and . . . a GS-14 Information Security Manager . . . ."); Am. Cmpl. ¶ 26 ("The Agency also assigned Ms. Richardson the job duties of a GS-11 and GS-12 . . . ."); Reply at 3 ("Plaintiff's detail did involve, in part, the performance of certain duties that had previously been assigned to GS-12 and GS-13 employees . . . .").)  Also, plaintiff was required to vacate her office and move to an office that had previously been occupied by a GS-14 equivalent.  (*E.g.*, Def.'s Stmt. ¶ 29.)

Based on her reassignment, plaintiff amended her pending EEO complaint to include a

claim of retaliation.  (*See* Def.'s Ex. 18 at 23.)  On August 8, 2005, plaintiff filed a formal EEO

complaint.  (*E.g.*, Am. Cmpl. ¶ 38.)  The DOC's Office of Civil Rights rejected plaintiff's claims

on December 21, 2005.  (*See* Def.'s Ex. 29 at 37.)

Plaintiff filed her original complaint in this Court on March 20, 2006, and her amended

complaint on May 18, 2006.  Before any discovery was conducted, defendant filed the instant

motion.  Plaintiff has filed an opposition, as well as an affidavit pursuant to Federal Rule of Civil

Procedure 56(f).

## ANALYSIS

### I.      Standard of Review

Under Rule 56, a motion for summary judgment must be granted if the pleadings and

evidence on file show that there is no genuine issue of material fact, and that the moving party is

entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986).  To survive summary judgment, the non-movant must provide evidence that would

permit a reasonable jury to find in his favor.  *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241

(D.C. Cir. 1987).  In considering a motion for summary judgment, "[t]he evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*,

477 U.S. at 255.

### II.     Legal Standard for Retaliation Claims under Title VII

To prevail on her retaliation claim absent direct evidence of retaliation, plaintiff must first

establish a prima facie case by "present[ing] evidence that (1) she engaged in activity protected

by Title VII; (2) [her] employer took an adverse employment action against her; and (3) the

adverse action was causally related to the exercise of her rights."  *Holcomb v. Powell*, 433 F.3d

889, 901–02 (D.C. Cir. 2006).  If plaintiff meets her burden to establish a prima facie case,

defendant "must articulate a legitimate nonretaliatory reason for [the adverse] action."  *Id.* at 901.

If defendant articulates such a reason, "plaintiff has the ultimate burden of establishing that the

reason asserted . . . is pretext for retaliation."  *Id.*

### III.    Prima Facie Case

### A.    Protected Activity

It is well settled that Title VII protects informal, as well as formal, complaints of

discrimination.  *See, e.g.*, *Mansfield v. Billington*, 432 F. Supp. 2d 64, 73 n.3 (D.D.C. 2006)

("The defendant does not dispute that the plaintiff's letter to her supervisors is a protected

activity under Title VII.  Because Title VII protects informal complaints such as letters, the

plaintiff has stated a claim for retaliation under Title VII."); *Lockamy v. Truesdale*, 182 F. Supp.

2d 26, 37 (D.D.C. 2001) ("The plaintiff clearly engaged in a protected activity . . . when he filed

an informal complaint with the EEOC alleging that [his supervisor] harassed him and

discriminated against him.").  Thus, as defendant does not dispute, plaintiff engaged in protected

activity when she first contacted EEO Counselor Worthy to complain of workplace

discrimination sometime in June 2006.[1]  Plaintiff again engaged in protected activity on July 6,

---

[1]In plaintiff's opposition, she appears to suggest that she engaged in protected activity even earlier, when she "met with [Willie 'Jay'] Jamison and [John] Gu[e]nther in late May 2005 to express her concerns about Mr. Yamamoto's discriminatory behavior."  (Opp. at 28 n.5.)  To the extent that plaintiff's opposition attempts to raise a claim of retaliation based on her alleged meeting with Jamison and Guenther, plaintiff failed to raise such a claim in her amended complaint and the Court cannot consider it now.  *See, e.g.*, *Ames v. Yellow Cab of D.C., Inc.*, No. 00-3116, 2006 WL 27115646, at *7 n.6 (D.D.C. Sept. 21, 2006) ("Because plaintiff has not submitted a motion for leave to amend his complaint under Fed. R. Civ. P. 15(a) or shown good cause as to why this substantive claim [raised for the first time in opposition to the defendant's motion for summary judgment] should be added at this stage of the proceedings, his . . . claim will not be considered . . . ."); *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 13 n.6

2005, when she declined OSY's offer of resolution and expressed her intention to proceed with a formal complaint. Thus, plaintiff has established the first element of her prima facie case.

### B.    Adverse Action

To establish the second prima facie element of retaliation, a plaintiff need not necessarily show an adverse action that affects the terms and conditions of employment. *See Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (rejecting the position of several circuits that had previously required plaintiffs to show acts affecting decisions such as hiring, granting of leave, firing, promotion, or compensation); *accord Rochon v. Gonzales*, 438 F.3d 1211, 1217–18 (D.C. Cir. 2006). As the Supreme Court recently clarified in *White*, a plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 126 S. Ct. at 2415 (quoting *Rochon*, 438 F.3d at 1219 (internal quotation marks omitted)). Here, plaintiff claims to have suffered two materially adverse actions: her detail to the special projects officer position and her unfavorable mid-term evaluation. (*See* Am. Cmpl. ¶¶ 22–23; Opp. at 9–10.)

"Whether a particular reassignment [of job duties] is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *White*, 126 S. Ct. at 2417 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation

---

(D.D.C. 2003) ("[W]hether plaintiffs can amend their complaint through a statement in their opposition is a dubious proposition at best."); *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 158 (D.D.C. 2002) (calling "invalid" a sex discrimination claim that "was not made in the original complaint or advanced in a motion to amend").

marks omitted)).  The D.C. Circuit has "expressly recognized that 'reassignment with significantly different responsibilities . . . generally indicates an adverse action.'"  *Holcomb*, 433 F.3d at 902 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Here, plaintiff alleges that she was stripped of all supervisory authority, assigned to a position without a job description, and required to perform duties beneath her grade.  (Reply at 2.)  Defendant does not deny plaintiff's allegations.  (*See id.*)  Instead, defendant argues that, as a matter of law, such allegations are insufficient to show an adverse action.  (*See id.* at 2–4.)

The Court disagrees.  Being stripped of all supervisory authority may, taken alone, constitute a materially adverse action.  *See, e.g.*, *Burke v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002) ("[W]e have no doubt that the removal of [the plaintiff's] supervisory responsibilities constituted an adverse employment action.").  Defendant's contention that the removal of supervisory responsibilities must be *permanent* to constitute an adverse action for purposes of a Title VII retaliation claim is unpersuasive after *White*.[2]  (*See* Reply at 3.)  Keeping in mind that plaintiff's prima facie burden should not be onerous, the Court concludes that there is a triable issue of fact as to whether plaintiff's 120-day reassignment constituted a materially adverse action.  *Cf. Czekalski v. Peters*, --- F.3d ---, ---, 2007 WL 283443, at *4 (D.C. Cir. 2007) (explaining that "[w]hether a particular reassignment of duties constitutes an adverse action for

---

[2]Defendant mistakenly relies on *Smith v. District of Columbia*, 271 F. Supp. 2d 165 (D.D.C. 2003).  (*See* Reply at 3–4.)  *Smith* is a pre-*White* case in which the Court based its conclusion that "temporary reassignment without diminution in pay or benefits is not an adverse action" for purposes of a Title VII retaliation claim on D.C. Circuit authority discussing adverse actions in the Title VII discrimination context.  271 F. Supp. 2d at 173 (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)).  *White* abrogated the holding of *Smith* by clarifying that the protection provided by Title VII's anti-retaliation provision is broader than the protection provided by its anti-discrimination provision.  *See* 126 S. Ct. at 2414.

7

purposes of Title VII is generally a jury question," and recognizing a prima facie adverse action for purposes of the plaintiff's Title VII discrimination claim because she was laterally transferred to a position with "'significantly different' - - and diminished - - supervisory and programmatic responsibilities").

Similarly, a jury could find an adverse action based on plaintiff's unfavorable mid-term evaluation. *See, e.g.*, *Moses v. Howard Univ. Hosp.*, --- F. Supp. 2d ---, --- , 2007 WL 442218, at *7 (D.D.C. 2007) ("[P]laintiff has demonstrated that at least one adverse action - - his lower evaluation score in June 2000 - - took place within approximately five months of [when] his managers . . . learned about his previous suit."); *Howard v. Gutierrez*, 237 F.R.D. 310, 313 (D.D.C. 2006) (holding that a reasonable worker might be dissuaded from protected activity by, *inter alia*, "receiving a poor evaluation"); *Browne v. Potomac Elec. Power Co.*, No. 05-1117, 2006 WL 1825796, at * 2 (D.D.C. July 3, 2006) ("Just as insisting that an employee spend more time performing more arduous work would discourage a reasonable employee from bringing discrimination charges, so too would formal disciplinary action and a poor performance evaluation.").

Thus, plaintiff has satisfied her prima facie burden to show an adverse action.

### C.      Causal Link

Plaintiff may establish the causal link element of her prima facie case by showing that her supervisors knew that she had engaged in protected activity, and that they took their adverse actions against her shortly thereafter. *E.g.*, *Holcomb*, 433 F.3d at 903. "Courts generally have accepted time periods of between a few days and a few months between the protected activity and the adverse action . . . ." *Moses*, --- F. Supp. at --- , 2007 WL 442218, at *6.

Defendant argues that plaintiff cannot establish a causal link between her EEO activity and her detail to special projects officer because Yamamoto was already contemplating her detail before June 20, 2005 - - the date on which the existing record suggests that he first learned of plaintiff's EEO complaint.  (*See, e.g.*, Pl.'s Ex. 5 at 2 (stating that Worthy informed Yamamoto of plaintiff's concerns and request for ADR on June 20, 2005); Yamamoto Decl. at 22 (stating that Yamamoto became aware of plaintiff's EEO complaint when Worthy informed him of it on June 20, 2005); *see also id.* at 25 (attaching an email dated June 17, 2005, in which Jamison references Yamamoto's plan to detail plaintiff); Def.'s Ex. 13 at 14 (declaration of Jay Jamison) (stating that, "in early June 2005," Jamison spoke with Yamamoto and Bell about their desire to detail plaintiff).)  Defendant is correct that "[e]mployers need not suspend previously planned transfers upon discovering that [an employee has engaged in protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  Accordingly, because the evidence strongly suggests that Yamamoto was considering plaintiff's detail before he learned of her EEO complaint, it cannot be concluded at this stage that plaintiff has established a prima facie case of retaliation based on her detail.

However, "as a general rule, summary judgment is strongly disfavored where the non-moving party has had no opportunity to conduct discovery."  *Johnson v. Potter*, No. 04-6634, 2005 WL 2257436, at *11 (W.D.N.Y. Sept. 16, 2005).  "Rule 56(f) motions should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'"  *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) ((quoting *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992)).  This is

so even if a plaintiff has had an opportunity to collect evidence through the EEO administrative process. *See, e.g.*, *Wiggins v. Powell*, No. 02-1774, 2005 WL 555417, at *24 (D.D.C. Mar. 7, 2005) ("While some of these witnesses have given testimony in the context of Plaintiff's EEOC complaint relating to his non-selection, the plaintiff is entitled to 'a fresh, independent determination of the "matter" at stake,' as 'the court's inquiry is not limited to or constricted by the administrative record, nor is there any deference due the agency's conclusion.'" (quoting *Doe v. United States*, 821 F.2d 694, 697–98 (D.C. Cir. 1987)).

Here, plaintiff has not yet had the benefit of taking any discovery, and she has submitted a Rule 56(f) affidavit. The affidavit asserts that plaintiff needs discovery to determine, *inter alia*, the dates on which she first contacted her EEO counselor and on which management first became aware of her EEO complaint. (Aff. at ¶ 7.) Under the circumstances, it would be premature to conclude that defendant cannot state a prima facie case of retaliation based on her detail. *Cf. Chappell-Johnson v. Powell*, 440 F.3d 484, 488–89 (D.C. Cir. 2006) ("As the Supreme Court has explained, '[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case.' Indeed, as the Court [has] also pointed out, discovery may even uncover direct evidence of discrimination, thus entirely eliminating the need to prove a prima facie case." (citation omitted) (first alteration in original) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002))); *Wiggins*, 2005 WL 555417, at *24 ("[T]he Court concludes that (1) it lacks a full record containing all facts relevant to Plaintiff's claims that would allow it to make a fully informed decision on the merits of Defendant's motion for summary judgment and (2) Plaintiff has not been afforded a sufficient opportunity to test the quality of his claims, plumb the depths of the relevant witnesses, and fully

investigate his alleged mistreatment.").[3]

Thus, defendant is not entitled to summary judgment on the theory that plaintiff has not

stated a prima facie case.

## IV.    Pretext

Defendant additionally argues that summary judgment is warranted because defendant

has articulated a legitimate, nondiscriminatory reason for plaintiff's detail (*i.e.*, that her

performance as assistant director of the Counterespionage Division was inadequate) and plaintiff

has provided only conclusory allegations to show pretext.  Again, the Court disagrees.  For one, it

cannot be said that plaintiff has produced *no* evidence of pretext.  Plaintiff may use the same

evidence of temporal proximity that established a prima facie causal link between her protected

activity and her negative performance evaluation.  *See, e.g.*, *Stevens v. Nat'l R.R. Passenger

Corp.*, No. 05-1924, 2006 WL 1550006, at *9 (D.D.C. June 2, 2006) (explaining that evidence

showing pretext may take the form of (1) *evidence from a plaintiff's prima facie case*, (2) any

---

[3]Moreover, it is arguable that plaintiff can survive summary judgment on the theory that she received a negative performance evaluation from Bell in retaliation for her EEO activity. The record supports that Bell may have learned about plaintiff's informal EEO complaint on or about June 27, 2005. (*See* Pl.'s Ex. 5 at 2 ("On June 27, 2005, Mr. Yamamoto acknowledged [plaintiff's] request [for ADR] and referred [Worthy] to David Bell . . . to discuss possible resolution.").)  Bell gave plaintiff her negative performance evaluation fourteen days later. (*See* Yamamoto Decl. at 52.)  In the interim, plaintiff continued to engage in protected activity by refusing OSY's offer of resolution - - a refusal of which plaintiff alleges that Bell was aware, and which plaintiff made just five days before she received her negative performance evaluation. (*See* Am. Cmpl. ¶ 23; Opp. at 9.)  On these facts, plaintiff can establish a prima facie causal connection based on temporal proximity. *Cf. Holcomb*, 433 F.3d at 903 ("Because [the plaintiff] repeatedly engaged in protected activity during the period when she also experienced reduced work assignments, we believe she has met [her] minimal burden and made out a prima facie case of retaliation."); *Roberson v. Snow*, 404 F. Supp. 2d 79, 94–95 (D.D.C. 2005) ("A three-week or five-and-one-half-month time lapse between plaintiff's protected activity and the employer-initiated investigations leading to defendant's adverse actions are likely sufficient for plaintiff to establish a prima facie case of retaliation.").

evidence presented to attack a defendant's proffered reason, and (3) any other available evidence).  More importantly, the question of pretext "is necessarily fact intensive and granting a motion for summary judgment on this issue prior to providing the parties with any opportunity for discovery is clearly contrary to this Circuit's precedent."  *Id.* (quoting *Barry v. U.S. Capitol Guide Bd.*, No. 04-0168, 2005 WL 1026703, at *7 (D.D.C. May 2, 2005)).  Accordingly, given that plaintiff has not yet had an opportunity to conduct discovery, it would be premature to grant defendant's motion for summary judgment.[4]

## CONCLUSION

For the foregoing reasons, defendant's "Motion to Dismiss and for Summary Judgment" will be granted as to Count II, but denied as to Count I.

_____
                     s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: February 26, 2007

---

[4]At the conclusion of discovery, if defendant still regards the evidence as insufficient to show pretext, the Court will entertain a renewed motion for summary judgment.  *See Barry v. U.S. Capitol Guide Bd.*, No. 04-0168, 2005 WL 1026703, at *7 n.8 (D.D.C. May 2, 2005).