UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
DEC 1 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PARTHENIA RICHARDSON, )
)
Plaintiff, )
)
v. ) Civil Action No. 06-00517 (ESH)
)
CARLOS M. GUTIERREZ, )
SECRETARY, U.S. DEPARTMENT ) Date: December 12, 2007
OF COMMERCE )
)
Defendant. )

## PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S RESPONSES TO PLAINTIFF'S DISCOVERY REQUEST

Plaintiff hereby moves this Court to order Defendant to provide full and complete answers to her written discovery requests as well as to provide all documents responsive to her document requests. As further explained in the attached memorandum of points and authorities, the undersigned certify that Plaintiff, has in good faith conferred or attempted to confer with Defendant in an effort to secure the disclosures without court action. A proposed order and a memorandum of points and authorities in support of this motion follows.

Respectfully submitted,

*Parthenia Richardson*
Parthenia Richardson, Pro se
12604 Windbrook Drive
Clinton, MD 20735

Home: (301) 292-2059
Cell: (240) 838-4144

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARTHENIA RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-00517 (ESH) |
| ) | |
| CARLOS M. GUTIERREZ, ) | |
| SECRETARY, U.S. DEPARTMENT ) | Date: December 12, 2007 |
| OF COMMERCE ) | |
| ) | |
| Defendant. ) | |

### **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DEFENDANT'S RESPONSES TO PLAINTIFF'S DISCOVERY REQUEST**

Pursuant to Fed. R. Civ. Pro. 37, Plaintiff hereby moves to compel Defendant's full and complete responses to Plaintiff's discovery requests. On August 24, 2007, Plaintiff served her first discovery request upon Defendant. Ex.1. On September 25, 2007, Plaintiff served her second request upon Defendant due to the lack of acknowledgement of discovery request dated August 24, 2007, Ex. 2. On November 27, 2007, Ex. 3, Plaintiff wrote to Defendant in a good faith effort to resolve discovery requests, Ex.4. Defendant failed respond on all occasions. Over these past four and half months, Plaintiff's has repeatedly written Defendant's counsel to try to resolve the request for discovery letters. See Exs. a 1-4. Despite Plaintiff's best effort, Defendant has not responded, and Plaintiff is thus now forced to file this motion to compel.

I. Nature of Case

On February 20, 2005, the Defendant selected Ms. Richardson (hereafter "Plaintiff") to serve as a Supervisory Security Specialist, ZA-0080-V (GS-0080-15 equivalent), Assistant Director of the Counter Espionage Division, Office of Security (hereafter "OSY"), Office of the Secretary, United States Department of Commerce (hereafter "DOC"), in Washington, DC. Prior to this appointment, which was a promotion, Ms. Richardson served as a Security Specialist, GS-0080-14, in the Department of Homeland Security (DHS). The Plaintiff was the only African-American female to ever hold the Assistant Director for Counter Espionage position in OSY. When the Plaintiff assumed her new position, she met with Richard Yamamoto, her second-line supervisor of record and the Director of OSY, to discuss his expectations of her in her new position. Mr. Yamamoto made it clear that a number of things in the office needed to change, and he specifically told the Plaintiff that her subordinates were not completing their work and, as their new manager, she was to take full accountability for their performance. He also indicated that he wanted her to be able to work autonomously.

Unbeknownst to the Plaintiff, the problems within OSY were much more severe and long-standing than she was lead to believe by Mr. Yamamoto. There were significant work-related issues which had been inadequately addressed, endangering the mission of OSY, as well as serious morale problems which had resulted in numerous employees filing complaints.

When the Plaintiff attempted to address these outstanding issues, and to take control of personnel matters, Mr. Yamamoto suddenly changed course. Instead of providing the Plaintiff with management's support, time and time again, Mr. Yamamoto

went out of his way to hinder and encumber the Plaintiff's efforts to succeed as a supervisor. For example, Mr. Yamamoto allowed her subordinates to speak to her in a condescending manner, openly challenged her supervisory decisions in front of her subordinates, and took other steps to wrongly criticize her decision-making. Indeed, although he accused the Plaintiff of not carrying out her duties as the Assistant Director of Counter Espionage, he nonetheless failed to offer any concrete or specific instances of when she did not effectively manage her office. In short, Mr. Yamamoto disparaged her and made unfounded allegations as a pretext to undermine her authority.

These incidents are significant because they highlight the disparate treatment which the Plaintiff was subjected to during her tenure with OSY and provide indirect evidence of Mr. Yamamoto's retaliatory motive. Unlike her Caucasian and male counterparts, the Plaintiff was erroneously held to a higher standard than others, failed to receive the support and mentorship necessary to carry out her duties, and was made the scapegoat for deep-seated problems in OSY which predated her appointment. When the Plaintiff stood up to this disparate treatment and pointed out the unfair discrepancies in how she was treated in comparison to her Caucasian and male colleagues, Mr. Yamamoto quickly and swiftly reassigned her, an action which amounted to a demotion because he stripped her of her supervisory duties and responsibilities and gave her office and job to a Caucasian male, Thomas deSeve. Faced with this humiliation and embarrassment, as well as the fact that she was no longer assigned duties commensurate with her position and was forced to work in an undesirable and belittling environment, the Plaintiff resigned her position.

Significant to this case, and the Plaintiff's burden of proof, is evidence of Mr.

Yamamoto's preferential treatment of comparators, such as Tom deSeve and Robert Page, among others, as well as the treatment her predecessors. In particular, testimony of co-workers and other evidence shows that the Plaintiff was treated disparately. As such, this differing treatment demonstrates that the Agency's reasons for demoting or reassigning her after she complained to the EEO are pretext and that others were not punished for similar alleged transgressions. For these reasons, as will be set forth in greater detail below, the Plaintiff should be allowed to obtain the discovery which would be necessary to prove her claims. This is particularly the case where, as here, there has been little, if no opportunity, for Plaintiff to seek comparator information.

## II. Argument

### A. General Discovery Standards

The United States Supreme Court has long adhered to an extremely liberal standard with respect to the scope of permissible discovery in civil litigation. The landmark cases of *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947) and *Harris v. Nelson*, 394 U.S. 286, 297 (1969) crystallized the notion that the discovery rules codified in the Federal Rules of Civil Procedure are to be generously and liberally construed to permit great latitude for the gathering of relevant facts. Fed R. Civ. Pro. 26(b) plainly comports with the Supreme Court's expansive interpretation by permitting "discovery regarding any matter not privileged, which is relevant to the subject matter in the pending action." Rule 26(b) also expressly provides that discovery is not limited to admissible evidence, but also includes anything that "appears reasonably calculated to lead to the discovery of admissible evidence."

Allowing broad discovery in employment discrimination cases is crucial, given that these types of cases turn largely on complicated inferences concerning an employer's state of mind. This fact has long been recognized by the D.C. Circuit and other Circuits that have had occasion to explore the parameters of permissible discovery in employment discrimination cases. See, e.g., *Minority Employees at NASA (MEAN) v. Beggs*, 723 F.2d 958 (D.C. Cir. 1983); *Stebbins v. Keystone Ins. Co.*, 481 F.2d 501, 512 (D.C. Cir. 1973) (noting "discovery is usually the cornerstone of any successful discrimination complaint"); *Mitchell v. AMTRAK*, 208 F.R.D. 455, 458 (D.D.C. 2002) (noting that Court is "loathe to create automatic limits on a party's right to seek discovery in Title VII cases").[1] Given that to an unusual degree, employment discrimination cases turn on circumstantial evidence, the possible range of relevant evidence is, by necessity, extremely broad. See *Mitchell*, 208 F.R.D. at 458. Courts have consistently recognized the close relationship between the need for circumstantial evidence and a correspondingly broad application of relevance in employment discrimination cases:

> [D]iscrimination may be subtle and even unconscious. Even an employer who knowingly discriminates on the basis of age may leave no written records revealing the forbidden motive and may communicate it orally to no one. When evidence is in existence, it is likely to be under the control of the employer, and plaintiff may not succeed in turning it up.

*Oxman v. WLS-TV*, 12 F.3d 652, 657 (7th Cir. 1993), *quoting Oxman v. WLS-TV*, 846 F.2d 448 (7th Cir. 1988);

> [D]efendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it.... The law tries to protect average and even below-average workers against being treated more harshly than would be the case if they were a different race, sex, religion, or national origin, but it has

---

[1] *See also Rich v. Martin Marietta Corp.*, 522F2d 333, 343 (10th Cir. 1975); *accord Hollander v. American Cynamid*, 895 F.2d 80, 81-82 (2nd Cir. 1990); *Palmer v. Reader's Digest*, 122 F.R.D. 445 (S.D.N.Y 1988); *Hefenider v. United Grocers*, 48 FEP Cases 1202, 1203 (D.Or. 1988).

6

difficulty achieving this goal because it is so easy to concoct a plausible reason for ... firing ... a worker who is not superlative. A plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance.

*Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987). See also *Mitchell*, 208 F.R.D. at 458 ("As Title VII cases are particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a hiring official, discovery in these cases is necessarily broad").

Because courts have consistently recognized that plaintiffs can usually only prevail in discrimination cases by presenting circumstantial evidence and that a broad interpretation of relevant evidence is necessary to permit the discovery and presentation of such evidence, courts have also consistently refused to limit plaintiffs' discovery and presentation of evidence to evidence concerning a plaintiff's own individual circumstances.

    B.    <u>Defendant's Failure to Respond to Numerous Discovery Requests</u>

        1.    **Defendant's Failure to Respond to Discovery Requests.**

Defendant to date has failed to respond to request for discovery documentation. Request for discovery documentation sent via certified mail to Defendant on August 24, 2007 included the following:

- All Agency documentation to include sworn declarations from Mr. Willie "Jay" Jamison, Employee and Labor Relations Specialist, Mr. John Guenther, Employment Attorney, and Mr. Brian DiGiacomo, Chief Employment & Labor Law Division that reflects the meeting between Plaintiff, Willie 'Jay' Jamison and John Guenther in late May 2005 to

      express her concerns about Mr. Yamamoto's discriminatory behavior as well as the personnel action of Carla Fisher. Meeting was initially scheduled with Brian DiGiacomo, and Willie "Jay" Jamison, John Guenther was asked to take the meeting for Mr. DiCiacomo.

- Plaintiff requests sworn declarations of Ms. Bernadette Worthy and Mr. Otto Wolf to determine when management was first notified of the Plaintiff's initial contact with the intent to file an EEO complaint. Plaintiff needs to obtain discovery on this issue to determine exactly what date management became aware that Ms. Richardson had contacted the EEO to file a complaint.

2. It is not clear from Defendant's failure to respond to discovery request (sent first request August 24, 2007; sent second request September 27, 2007; final request November 27, 2007) whether it has withheld information or documents based upon general objections, or whether they ever intend to provide the documentation requested.

III. Conclusion

      For the foregoing reasons, Plaintiff respectfully requests that the Court compel Defendant to respond in full to Discovery Document Request dated August 24, 2007, if Defendant has withheld information pursuant to its General Objections, that information must be produced.

Respectfully submitted,

*Parthenia Richardson*
Parthenia Richardson
Plaintiff Pro se
12604 Windbrook Drive
Clinton, MD 20735
Home: (301) 292-2059
Cell: (240) 838-4144

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of December, 2007, I caused a true and correct copy of the foregoing Plaintiff's Motion to Compel, to be served certified mail, to:

Charlotte Abel
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., Civil Division
Washington, D.C. 20530
(202) 307-2332
Counsel for Defendant

Nancy Mayer-Whittington
Clerk of Court
United States District Court for the
   District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

*Parthenia Richardson*
Parthenia Richardson
Plaintiff Pro se
12604 Windbrook Drive
Clinton, MD 20735
Home: (301) 292-2059
Cellular: (240) 838-4144

9